# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERTA SKIVER PEARCE, f/k/a ROBERTA
SKIVER VALENTE,

       Plaintiff-Appellee,

v

JAMES JOSEPH VALENTE,

       Defendant-Appellant.

UNPUBLISHED
March 24, 2015

No. 318819
Genesee Circuit Court
LC No. 05-258969-DM

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant James Valente appeals by right the trial court's order granting plaintiff Roberta Pearce's motion for modification of parenting time. We affirm.

The parties were married in 2000 and divorced in 2006. They have one child, KV, born in 2002. The consent judgment of divorce granted joint legal and physical custody, but provided that "primary custody . . . shall reside with the Plaintiff." Defendant was to have parenting time on alternate weeks from 9:00 a.m. Wednesday through 9:00 a.m. Friday one week, and from 9:00 a.m. Thursday through 9:00 a.m. Monday the next week. The parties were to split holidays and vacations. The parties' parenting agreement provided that defendant would have 155 overnights with the child per year.

In April 2012, plaintiff filed a motion regarding parenting time, child support, and Friend of the Court (FOC) services. Plaintiff, now remarried, claimed that the most recent informal agreement, which began in May 2011 and provided for week-on/week-off parenting (each party having 182.5 days per year), became "detrimental to the minor child's education and personal hygiene." More recently, the parties had reverted to the schedule outlined in the divorce judgment and associated documents. In this schedule, defendant had two overnights with KV one week and four overnights the next.

Defendant denied plaintiff's allegations regarding hygiene and educational concerns, noting that KV had very good grades in third and fourth grade. Defendant thought that the alternating week parenting-time schedule had worked well, while plaintiff favored the more recent schedule. The court asked the parties to try to resolve their differences, noting that joint custody required maturity, cooperation, and putting the child's needs first.

-1-

The parties were unable to agree. Plaintiff charged that the alternating-week schedule did not serve KV's best interests because of defendant's "lack of supervision and care." Defendant had allegedly threatened KV's school teacher after the teacher wrote a letter critical of defendant's parenting. The child was now in counseling. Plaintiff sought an order modifying defendant's parenting time to every other weekend. Defendant responded that he did not threaten the teacher. After a hearing, in October 2012, the court denied defendant's motion to modify parenting time to a week-on/week-off schedule. The court observed that most recent order would prevail unless a change in circumstances could be shown.

Plaintiff then filed a motion regarding legal custody and KV's therapy, alleging that she and defendant were unable to communicate effectively regarding the child's best interests on mental health, education, and hygiene. Plaintiff attached photos of defendant picketing adjacent to KV's elementary school. Defendant carried signs questioning the judgment of a named fifth-grade teacher and asking parents to sign a petition. Plaintiff alleged that these actions alienated KV from her friends. Defendant also demanded to meet with the teacher and school principal and that the teacher write a letter retracting her statements. A letter was written and the teacher signed it. In June 2012, plaintiff started KV in counseling with Dr. Elizabeth Rose, Ph.D. Plaintiff alleged that defendant had threatened legal action against Dr. Rose if the allegedly unnecessary therapy did not cease. Dr. Rose then canceled a therapy session. Plaintiff contended that defendant had harassed Dr. Rose with numerous phone calls. Plaintiff sought sole legal custody and an evidentiary hearing.

In response, defendant stated that he did not oppose therapy, but asserted that plaintiff had refused to communicate with him or let him attend therapy or transport KV. Defendant admitted that he had picketed the teacher, but he alleged that the teacher had lied and felt hateful toward men. Defendant argued that his joint legal custody rights were violated when plaintiff did not include him in the counseling decision. The parties also disagreed regarding defendant's child support.

At a hearing, plaintiff argued that KV's anxiety stemmed from defendant's carrying a gun (including while picketing) and threatening to shoot people, and that children were teasing KV about her "crazy dad." In response, defendant noted that the teacher's retraction letter stated that the observations in her first letter were made over two weeks and not throughout the entire school year. The court denied plaintiff's request for temporary sole legal custody but stated that Dr. Rose should decide if and when either parent would become involved in KV's therapy.

An evidentiary hearing on parenting time was scheduled and adjourned several times. Plaintiff filed another motion regarding legal custody and parenting time, while defendant issued subpoenas to depose the teacher, school principal and superintendent, and various family members. Dr. Rose and a psychiatrist, Kang Kwon, M.D., had indicated that KV had attention deficit hyperactivity disorder (ADHD), and recommended non-stimulant medication. Defendant, on the other hand, blamed KV's difficulties on stress and the beginnings of puberty, which no medicine could cure. Defendant also believed that the real motive behind plaintiff's motion was to switch school districts. Plaintiff claimed that KV was fearful of defendant and felt compelled to conform to his demands and wishes. Defendant denied that KV feared him and alleged that any problems resulted from inconsistent discipline.

Following a hearing in March 2013, the trial court granted plaintiff temporary sole legal custody and authorized treatment for KV. The court ordered defendant to administer KV's medicine while caring for her. Subsequently, defendant filed a motion to allow a second opinion on ADHD and medication, prohibit a change in school district, and decide whether there was an established custodial environment. Defendant argued that temporary full legal custody was improperly granted without an evidentiary hearing or a showing of change in circumstances. Defendant wished to have KV evaluated by David Rosenberg, M.D., chief of psychiatry at Children's Hospital of Michigan and professor at Wayne State University. The court allowed this examination.

The evidentiary hearing began in July 2013. The parties initially attempted to resolve their differences. Plaintiff was amenable to allowing defendant two consecutive overnights one week and four overnights the next week during the school year, with week-on/week-off parenting time in the summers. The court expressed its belief that such a schedule would impinge on stability. Defendant agreed to plaintiff having sole legal custody regarding health care, except that defendant would have advance notice and the right to attend appointments, plus access to the child's medical information. The parties agreed to admit Dr. Rose's file on KV and Dr. Rosenberg's deposition transcript and report. They also stipulated that there was no contested issue regarding ADHD, and that medical issues would be decided by the child's doctors. KV's school district would not be changed absent an agreement or a further hearing. The court found that awarding sole legal custody to plaintiff was in the child's best interests.

At the hearing, Dr. Rose testified that she had seen KV for counseling every two weeks since June 2012. Early on, defendant had called and said that therapy should cease and that Dr. Rose should have gotten his permission because the parties had joint legal custody. Defendant implied that there could be legal consequences. After this, Dr. Rose stopped seeing the child for a while. She later spoke with defendant and he assented to KV continuing therapy. He wished to have some joint sessions with his daughter, and this was attempted. However, the child did not want her parents at therapy, even in the waiting room. Dr. Rose testified that parenting time transitions were very stressful and that KV had fears at her father's house. However, KV made good progress in therapy. She was a very bright child whose insight into her struggles was extremely sophisticated for a child of her age. She did score high on some scales of an ADHD screening instrument. When defendant filled out this instrument, his ratings for his daughter were so low as to be unrealistic for any child. Still, Dr. Rose did not think he purposely skewed the child's scores. Dr. Rose noted that since the child had been on medication, her writing had improved "quite amazingly." Dr. Rose reported that KV enjoyed her time with and dearly loved both parents. Dr. Rose did not recommend a specific parenting-time schedule but noted that she had difficulty following the current schedule herself. KV did want her parents to tell her ahead of time when she had to switch houses and to put the schedule on a calendar.

The testimony of the parents and Dr. Rose revealed different parenting styles regarding homework. Plaintiff's practice was to sit with the child and support her while she did her homework, while defendant would be nearby, assisting KV when she needed help and checking homework when it was done. Plaintiff thought that since the parties abandoned the week-on/week-off schedule and reverted to the parenting schedule in the divorce judgment, KV's academics had improved. Plaintiff felt that defendant placed activities (especially karate) above academics and that the child's personal hygiene had suffered while at her father's house.

Defendant denied these charges and testified that he insisted on good hygiene and completion of homework. He in fact supervised the child's homework and helped with her assignments when necessary. The child had performed well in school. Defendant had looked up her missing assignments and found that nearly all were on plaintiff's overnights. There were no missing assignments in the last school year.

Defendant testified that he did not find out about KV's counseling until three months after it began. Once Dr. Rosenberg confirmed the ADHD diagnosis, defendant "was fine" with it and with the medications. Defendant also agreed that KV benefited from counseling and that the parents' fighting was a big stressor for KV.

The court found no established custodial environment based on the shared parenting time arrangement. The court applied the best-interest factors of MCL 722.23 and found all equal or favoring plaintiff, and that plaintiff showed by a preponderance of the evidence that a change in the parenting schedule was in KV's best interests. The court's order provided that during the school year, defendant would have parenting time every other weekend from Friday after school until 6:00 p.m. on Sunday, plus Wednesday to Thursday morning during the other weeks. In the summers, the parties would have week-on/week-off parenting time. Defendant filed motions for a stay and for peremptory reversal, which were denied.

On appeal, defendant claims that the trial court erred by failing to find an established custodial environment in his home. We disagree. An established custodial environment exists where "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). An established custodial environment may exist in both parents' homes or neither parent's home. *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). If there is an established custodial environment, the party seeking to change custody must show by clear and convincing evidence that the change is in the child's best interests. MCL 722.27(1)(c); *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). If no established custodial environment is shown, the burden is on the parent proposing a change to establish a change of circumstances or proper cause by a preponderance of the evidence. MCL 722.27(1)(c); *Pierron v Pierron*, 486 Mich 81, 93; 782 NW2d 480 (2010).

The trial court found that KV looked to plaintiff for all essential care and emotional support, and that an established custodial environment existed with plaintiff. However, the court found no established custodial environment based on shared parenting time. The court's findings regarding the existence of an established custodial environment "should be affirmed unless the evidence clearly preponderates in the opposite direction." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003); see also *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). In evaluating the evidence, this Court defers to the credibility determinations of the trial judge, who had the opportunity to evaluate the testimony firsthand. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

We perceive no error in the trial court's finding. In other cases of shared parenting time, where the child alternates between the parents' homes, courts have found no established custodial environment. *Baker v Baker*, 411 Mich 567, 580-581; 309 NW2d 532 (1981); *Bowers v Bowers*, 198 Mich App 320, 324; 497 NW2d 602 (1993). The trial court did not err by

evaluating the evidence and concluding that no established custodial environment existed in either parent's home.

Defendant also takes issue with the court's finding of proper cause or a change in circumstances. MCL 722.27(1)(c). The change-in-circumstances and proper-cause standards are less stringent for modification of parenting time than for a change in custody. *Shade*, 291 Mich App at 28. When parents cannot agree on a child's medical treatment and educational course, these topics can have significant effects on a child's well-being. *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011). Here, the child's new medical diagnosis, the parties' disagreement over treatment, and the child's resulting anxiety were sufficient to show a change in circumstances.

Defendant insists that the court's drastic change in parenting time was, in effect, a change in custody and contravened the parties' agreement that joint physical custody would continue. The parties agreed to continue joint physical custody at the hearing of July 17, 2013, and an order was entered on September 9, 2013, stating that "physical custody shall remain joint" pursuant to the judgment of divorce. However, plaintiff correctly notes that the court must act in the child's best interests. MCL 722.27(1)(c). Further, the parties may not by agreement usurp the court's authority to determine suitable arrangements for the best interests of the child. *Lombardo v Lombardo*, 202 Mich App 151, 160; 507 NW2d 788 (1993). In this case, the court noted that the child's anxiety potentially stemmed from and was certainly exacerbated by the tension and exchanges between her parents.

Joint physical custody is defined in MCL 722.26a(7) as an order that the child "shall reside alternately for specific periods with each of the parents." The court's order in this case fits this definition. The order called for week-on/week-off parenting time in the summers. The child would also alternate between homes during the school year, although spending less time in defendant's home. This change in the percentages of time spent at each parent's home did not defeat the parties' agreement for joint physical custody. See MCL 722.26a(7)(a).

Next, defendant argues that the trial court erred in its evaluation of the best interests of the child. We do not agree. MCL 722.23 sets forth the 12 best-interest factors that must be evaluated to determine the child's best interests.

Regarding factor "a," MCL 722.23(a), the love, affection, and other emotional ties between parents and child, the court's finding that "both parties love their child and show it often" was supported by the record and is not challenged.

Factor "b," MCL 722.23(b), pertains to the parents' capacity and disposition to give the child love, affection, and guidance, and to continue the education and raising of the child in his or her religion or creed, if any. In reviewing this factor, the trial court recited the parents' differing styles of helping with homework, plaintiff's belief that defendant put recreation ahead of academics, and her testimony that the child did her homework at 10:00 p.m. at defendant's home. Plaintiff also testified that it was a struggle to get KV back on track after she returned from defendant's home, and that defendant mocked plaintiff's concerns. The court noted that defendant denied these points and argued that most missing assignments, lateness, and absences from school occurred on plaintiff's watch. The court emphasized defendant's picketing at the

school, which "was embarrassing to [KV] and she is still teased about it." The court found defendant's explanations unconvincing and his motive "sinister"; the court determined that his behavior implied a "very controlling and vindictive streak" and that his "venomous attacks have been directed at others who do not share his views, namely Dr. Rose, Dr. Kwon, and plaintiff mother."

The court's findings on this factor were not clearly erroneous or against the great weight of the evidence. Emphasis on defendant's picketing was not misplaced, because the picketing related to the child's education and defendant's capacity to give her guidance. It also reflected incredibly poor judgment and a shocking lack of sensitivity to the child's feelings. The court's use of strong adjectives was not out of proportion to defendant's activities and their effects on KV's social relationships.

The court also did not make findings against the great weight of the evidence in reviewing other education and guidance issues. The evidence showed that defendant's style of letting KV do her schoolwork independently was not working at first because of her disorganization and difficulty concentrating. Plaintiff's hands-on style was more helpful under the circumstances. Dr. Rose concurred in this judgment.

Factor "c" evaluates the disposition of the parties to provide food, clothing, and medical care. MCL 722.23(c). The court found that because of defendant's refusal to listen to concerns expressed by plaintiff, the child, and her teacher, as well as the recommendations of medical and mental health professionals, this factor favored plaintiff. Defendant argues that he did not threaten Dr. Rose with legal action or refuse to give the child prescribed medication. However, Dr. Kwon stated that defendant did not consent to giving KV prescribed medication without a court order. Dr. Rose testified that defendant implied legal consequences if she did not stop seeing the child.

The trial court's findings on this factor were not clearly erroneous or against the great weight of the evidence. While defendant did have joint legal custody and should have been consulted before the child was seen by a psychologist or psychiatrist, defendant seemed more interested in having his opinion prevail than in exploring what was best for his daughter. Instead of cooperating and trying to help her, the evidence showed that defendant obstructed the efforts of plaintiff and the doctors to deal with KV's difficulties. In the interim, the child, sensitive to her parents' arguments and disagreements, struggled unnecessarily for a significant period of time.

With respect to factor "d," which pertains to a stable, satisfactory home environment, the court found the parties equal and defendant has not challenged this finding.

Factor "e," the "permanence, as a family unit, of the existing or proposed custodial home or homes," MCL 722.23(e), was found to favor plaintiff because she "has remarried. Her new husband is a school teacher and has two sons that live with them fulltime." Defendant correctly argues that the court's analysis was erroneous, because the court incorrectly considered the "acceptability" instead of the permanence and stability of the family units or custodial homes. In *Ireland v Smith*, 451 Mich 457, 464-465; 547 NW2d 686 (1996), our Supreme Court held that "acceptability" of the home was not pertinent; the focus of factor "e" is on stability of the family

environment. In the present case, plaintiff being remarried to a teacher with two sons has nothing to do with the stability of her (or defendant's) home. Many single parents provide extremely stable homes in which children prosper. Defendant has a good job and nice home, and the court's finding that factor "e" favored plaintiff for the stated reasons was clear error.

However, this error was harmless. Factor "e" is only one of 12 factors the court considers in assessing the best interests of the child. The court did not overly emphasize its conclusions on factor "e," and other factors that were correctly analyzed and did receive evidentiary support were more pertinent to the court's conclusions. We find no reversible error.

The court determined that factor "f," the "moral fitness of the parties," favored plaintiff because her accounts of defendant using prostitutes and escorts were more credible than defendant's denials. This Court does not assess witness credibility, which is the province of the trier of fact. *Berger*, 277 Mich App at 705. Plaintiff's testimony on this issue was not inherently unbelievable. In addition to finding descriptions of sexual services on defendant's phone, plaintiff testified that defendant used an escort as a babysitter and would not let KV be dropped off at his home because he feared that an escort might cause a problem. These situations were directly relevant to KV's best interests and posed a possible danger to her in addition to showing a lack of moral fitness.

Factor "g," involving the parties' mental and physical health, and factor "h," the child's home, school, and community record, were found equal by the court. These findings are not challenged by defendant.

Factor "i," MCL 722.23(i), the reasonable preference of the child, was not considered because neither party requested that the court interview KV. Defendant argues that this factor should have been considered. Defendant quotes Dr. Rosenberg's deposition testimony that KV became tearful and clearly stated that she wanted "equal custody with both her mother and father the way it used to be." Dr. Rose testified that KV was confused by her then-current school year parenting schedule.

Defendant's argument receives some support from *Pierron*, 486 Mich at 91, wherein our Supreme Court found error in the trial court's failure to consider the reasonable preferences of the children, who were eight and thirteen years old. Here, the parties and court may not have wanted to cause KV further anxiety by asking her to state a preference. This is understandable. Even Dr. Rose did not ask the child's preference, which KV might have viewed as requiring a choice between her parents. Elsewhere in its opinion, the trial court found that KV loved her father, and that both parents loved her and showed it often. These findings were supported by the evidence, and defendant has cited no authority directly on point to suggest that the trial court's failure to elicit or consider the reasonable preference of the child was erroneous.

The court found the parents equal with respect to factor, "j," which addresses the "willingness and ability of the parties to facilitate and encourage a close continuing parent-child relationship between the children and other parent." MCL 722.23(j). The court found that both parents were willing to encourage a close relationship with the other parent. Defendant argues that factor "j" favored him, because plaintiff sought and obtained a drastic reduction in his parenting time. However, this does not establish that the court erroneously evaluated factor "j."

Plaintiff was exercising her legal rights in seeking a modification of parenting time, and she had valid reasons for requesting a change. This factor actually could have favored plaintiff, considering defendant's actions regarding KV's ADHD diagnosis and counseling and his picketing at her school.

The court found factor "k," domestic violence, to be inapplicable. With respect to factor "*l*," dealing with "any other factor considered by the court to be relevant to a particular child custody dispute," the court found the evidence favored plaintiff because defendant's "unrelenting quest to either maintain the current parenting time schedule or expand it to week on/off is driven by his best interests, not [KV's]." The court noted that defendant had attempted to sabotage KV's ADHD assessment. Defendant disagrees and cites Dr. Rose's testimony that "I don't assume that Mr. Valente sat and tried to flip this," referring to defendant's scoring of KV's ADHD characteristics. He also cites Dr. Kwon's testimony that "I don't think he [defendant] deliberately lowered the score." These professional witnesses would have applied a higher standard to judging defendant's motives than did plaintiff, who said that defendant admitted purposely scoring KV low on the test. Plaintiff's testimony did support the trial court's finding and, as noted previously, the court found plaintiff to be credible. In connection with this issue, defendant again points to his agreement to continue counseling after meeting with Dr. Rose and his consent to awarding sole legal custody to plaintiff after receiving Dr. Rosenberg's second opinion. These concessions by defendant did not come easily, though. In the face of much evidence that KV had ADHD and that the delays in treatment were hurting KV, defendant continued to fight and advance untenable legal arguments. The trial court did not err by addressing these concerns under factor "*l*" or by finding that they favored plaintiff.

We find no error requiring reversal in the trial court's analysis of the best-interest factors of MCL 722.23.

Defendant next argues that the trial court should have found Dr. Rosenberg more credible than Dr. Rose. Defendant points to Dr. Rosenberg's exceptional credentials and Dr. Rose's failure to state a specific parenting-time recommendation. Defendant also cites Dr. Rose's opinion that KV should not be away from either parent for long periods. As noted previously, this Court defers to the trial court on issues of witness credibility. *Berger*, 277 Mich App at 705. In this case, Dr. Rose also had excellent credentials and spent much more time with the child and her parents than did Dr. Rosenberg. Dr. Rose was very familiar with the child's feelings, thoughts, opinions, and problems with both parents. The record provides no basis to disturb the trial court's credibility determinations.

Defendant argues that this Court should order a week-on/week-off parenting-time schedule. However, in *Fletcher v Fletcher*, 447 Mich 871, 882; 526 NW2d 889 (1994), our Supreme Court held that the appellate courts' review of custody orders is not de novo. Upon finding a legal error, the appellate courts remand for reevaluation of the evidence under the proper standard. See, e.g., *Pierron*, 486 Mich at 91-92; *Ireland*, 451 Mich at 463, 469. Indeed, the trial court's custody decision is "entitled to the utmost level of deference."

The trial court's modification of the parenting-time schedule in this case was not erroneous and did not constitute an abuse of discretion. The court's decision was well-reasoned and supported by significant evidence. We perceive no error requiring reversal.

Finally, defendant argues that the trial judge should be disqualified from any further proceedings because he was biased. We disagree. Disqualification of a judge is governed by MCR 2.003. Generally, judges need not be disqualified "absent a showing of actual bias or prejudice." *In re Contempt of Henry*, 282 Mich App 656, 679-680; 765 NW2d 44 (2009). Judicial rulings are " 'almost never' " cause for disqualification, unless " 'deep-seated favoritism or antagonism' " can be shown. *Id*. at 680, quoting *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2002). "Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004). The litigant must show that on remand, the judge would be unable to rule fairly based on his or her past comments or views. *Id*.

Defendant has not demonstrated facts sufficient to satisfy the above standards. Most of defendant's complaints relate to the judge's written opinion and clearly deal with the judge's view of the facts of the case. "Personal bias" against the defendant or his counsel was not shown. Consequently, should any further proceedings be necessary, the trial judge would not be disqualified from presiding.

Affirmed. Plaintiff, as the prevailing party, may tax her costs. MCR 7.219.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra