BOWERS v BOWERS

Docket No. 146423. Submitted December 1, 1992, at Grand Rapids.
Decided March 1, 1993, at 9:05 A.M.

Jeffrey A. Bowers obtained a judgment of divorce from Terri K.
Bowers in the Benzie Circuit Court, George Van Kula, J., and
was awarded custody of both the parties' children. The defen-
dant appealed the custody determination, claiming that, in
light of a pretrial stipulation under which she took temporary
custody of one child and the plaintiff took temporary custody of
the other, the trial court erred in failing to ascertain whether
an established custodial environment existed and in failing to
cite sufficient factual bases for its determination under MCL
722.23(a)-(k); MSA 25.312(3)(a)-(k) regarding the children's best
interests. The Court of Appeals, Hood, P.J., and McDonald
and Fitzgerald, JJ., held that the trial court clearly erred in
failing to ascertain whether an established custodial environ-
ment existed and in failing to consider the children's prefer-
ences as required by MCL 722.23(i); MSA 25.312(3)(i), requiring
remand for a new custody hearing. 190 Mich App 51 (1991). On
remand, the court again granted the plaintiff custody of both
children. The defendant appealed.

The Court of Appeals *held:*

1. The trial court erred in finding that an established custo-
dial environment was created between the plaintiff and his
daughter following the first trial. Conversely, a new custodial
environment did not come into being between the defendant
and her daughter following the defendant's temporary regain-
ing of physical custody during that same period. Where, as in
this case, there are repeated changes in physical custody and
uncertainty created by an upcoming custody trial, a previously
established custodial environment is destroyed and the estab-
lishment of a new one is precluded. There were no expectations

REFERENCES

Am Jur 2d, Divorce and Separation §§ 974-981.

Primary caretaker role of respective parents as factor in awarding
custody of child. 41 ALR4th 1129.

Child's wishes as factor in awarding custody. 4 ALR3d 1396.

of permanence in the girl's temporary placement with her mother because of the upcoming custody trial.

2. There was an established custodial environment between the plaintiff and his son. The trial court's finding that the girl had established custodial environments with both of her parents was against the great weight of the evidence. Neither parent had an established custodial environment with respect to the girl.

3. The trial court's findings with respect to each of the factors to be considered in determining the best interests of a child were stated sufficiently.

4. The trial court erred in its determination with regard to some of the "best interests of the child" factors, MCL 722.23; MSA 25.312(3). The evidence is not clear and convincing that the boy's established custodial environment with his father should be changed. The preponderance of the evidence favors placing the girl in her mother's custody.

Affirmed in part and reversed in part.

REILLY, J., concurring, stated that the plaintiff and his daughter had an established custodial environment, but the trial court's findings of fact with regard to the best interest factors were against the great weight of the evidence. There was clear and convincing evidence that the best interests of the girl would be served by placing her in the custody of her mother.

1. DIVORCE — CHILD CUSTODY — BEST INTERESTS OF CHILD.

Child custody determinations are to be made in the best interests of the child (MCL 722.27[1][a]; MSA 25.312[7][1][a]).

2. DIVORCE — CHILD CUSTODY — ESTABLISHED CUSTODIAL ENVIRONMENT.

A court may not change the established custodial environment of a child involved in a custody dispute unless clear and convincing evidence establishes that such a change is in the best interests of the child; if no established custodial environment exists, custody is properly determined upon a showing by a preponderance of the evidence that a particular placement is in the child's best interests (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

3. DIVORCE — CHILD CUSTODY — ESTABLISHED CUSTODIAL ENVIRONMENT.

An established custodial environment exists with respect to a child if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort; the age of the child, the physical environment, and the inclination of the custodian

and the child regarding the permanency of the relationship also must be considered; custody orders, by themselves, do not establish a custodial environment (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

4. Divorce — Child Custody — Established Custodial Environment.

A previously established custodial environment is destroyed and the establishment of a new one is precluded during a period where there are repeated changes in the child's physical custody and there is uncertainty with regard to custody because of an upcoming child custody trial.

*Philip A. Clancey & Associates, P.C.* (by *Philip A. Clancey*), for the plaintiff.

*Robert B. Relph,* for the defendant.

Before: Hood, P.J., and Neff and Reilly, JJ.

Hood, P.J. This is a custody dispute arising from a divorce action. Defendant appeals as of right from an order granting plaintiff custody of both of the parties' children. We reverse in part. This is the second time that this Court has rendered an opinion concerning the custody of these children. See *Bowers v Bowers,* 190 Mich App 51; 475 NW2d 394 (1991).

The parties married in 1980 when plaintiff was twenty-one and defendant was sixteen. Defendant was pregnant with the couple's first child. A boy was born in 1981, and a girl was born in 1984.

In 1987, the couple lived in New Jersey, where plaintiff was stationed with the armed forces. The parties separated in November 1987 when the military transferred plaintiff to California. By agreement of the parties, the boy went with his father to California and the girl remained in New Jersey with her mother.

In February 1988, plaintiff sent the boy to live in Michigan with his parents. Plaintiff was dis-

charged from the military in June 1988, and has since resided in Michigan with his parents and the son. Defendant moved to Michigan with the daughter in November 1988. Pursuant to the parties' agreement, the children spend every weekend together alternating with each parent. Summer vacations were similarly split on an alternating weekly basis.

Plaintiff filed for divorce in April, 1988. Because plaintiff's mother was the circuit court clerk, the case was assigned to a visiting district judge. Trial was held on June 19, 1990.

On July 23, 1990, the court issued an opinion granting plaintiff custody of both children. An order to that effect was entered on October 5, 1990. Custody of the girl was then transferred to plaintiff.

On June 18, 1991, this Court reversed that decision, finding that the trial court committed clear legal error on a major issue in not determining whether an established custodial environment existed and in not determining the preferences of the children. *Bowers,* at 53-56. The girl nevertheless remained in her father's custody.

During her September 1991 visitation, defendant retained physical custody of the girl. Plaintiff obtained an emergency order requiring the girl's return. However, he opted to allow the girl to remain in her mother's custody until the case was resolved.

The second trial was held on September 25, 1991.[1] On October 2, 1991, the trial court again issued an opinion awarding custody of both children to plaintiff. An order to that effect was entered on October 29, 1991, but was stayed pending

[1] The record of the first trial was incorporated into the second by stipulation of the parties.

appeal. Thus, custody of the girl has remained with defendant since September 1991.

Custody determinations are reviewed de novo. *Baker v Baker,* 411 Mich 567, 573; 309 NW2d 532 (1981). However, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; MSA 25.312(8). Due deference "shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). However, a court may not immunize its findings from review by purporting to base them on pure credibility determinations in the face of other evidence. *Beason v Beason,* 435 Mich 791, 804; 460 NW2d 207 (1990).

Custody determinations are to be made in the best interests of the child. MCL 722.27(1)(a); MSA 25.312(7)(1)(a). However, a "court shall not . . . change the established custodial environment of a child unless there is presented clear and convincing evidence that [such a change] is in the best interest of the child." MCL 722.27(1)(c); MSA 25.312(7)(1)(c). If no established custodial environment exists, custody is determined upon a showing by a preponderance of the evidence that a particular placement is in the child's best interests. *Baker,* at 579.

Defendant first argues that the trial court erred in finding that an established custodial environment was created between plaintiff and his daughter following the first trial. We agree, but also find that no "new" custodial environment came into being between defendant and her daughter after defendant regained physical custody. Defendant

does not contest the existence of an established custodial environment between plaintiff and his son.

An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c); MSA 25.312(7)(1)(c). "The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c); MSA 25.312(7)(1)(c). The reasons why an established custodial environment exists are not important. *Bowers,* at 54. Custody orders, by themselves, do not establish a custodial environment. *Baker,* at 579. Rather, "[s]uch an environment depend[s] instead upon a custodial relationship of significant duration in which [the child] was provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which relationship between the custodian and the child is marked by qualities of security, stability and permanence." *Baker,* at 579-580.

In *Baker,* the child lived in the marital home until his parents separated, whereupon he lived with his mother in Colorado for six weeks and then with his father and paternal grandparents in Michigan for seven weeks. *Id.,* at 574, 580-581. In that context, the Supreme Court held that "[c]ertainly those repeated custodial changes and geographical moves, with the necessarily attendant emotional implications, destroyed the previously established custodial environment . . . and precluded the establishment of a new one, at least until after the trial." *Id.* at 581. This was so despite substantial community ties and ties to

close relatives. *Id.* at 580-582. We believe the same is true in this case.

Here, the girl clearly had an established custodial environment with her mother until custody was granted to the father following the first trial. *Bowers,* at 54. Plaintiff argues that a new established custodial environment developed thereafter with him. However, we find that the expectation of permanence in that arrangement was destroyed in June 1991 when the trial court's decision was reversed on appeal and a new trial was ordered, and certainly when defendant regained physical custody in September 1991.

We do not hold that a custodial environment can never be established while a parent has custody during the pendency of an appeal. However, we feel that *Baker* stands for the proposition that where there are repeated changes in physical custody and uncertainty created by an upcoming custody trial, a previously established custodial environment is destroyed and the establishment of a new one is precluded. See *Baker,* at 580-582.

In this case, as in *Baker,* there were no expectations of permanence in the girl's placement with her mother because of the upcoming custody trial. The establishment of a new custodial environment was also precluded by the fact that the girl was only in her mother's custody for about a month before custody was again legally changed, albeit by an order that was immediately stayed. As in *Baker,* at the time of the second trial there had been no "appreciable time" following the first court-ordered change in custody during which the child looked to either parent "*alone* 'for guidance, discipline, the necessities of life and parental comfort' in a stable, settled atmosphere in order that an 'established custodial environment' . . . could exist." *Baker,* at 582 (emphasis in original).

After carefully reviewing the record, we hold that the trial court's finding that the girl had established custodial environments with both of her parents was against the great weight of the evidence. Upon review de novo of the evidence, we find that neither parent had an established custodial environment with the minor girl.

The best interests of the child are "the sum total of the following factors":

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home, or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

(k) Any other factor considered by the court to

be relevant to a particular child custody dispute. [MCL 722.23; MSA 25.312(3).]

The trial court must consider each of these factors and explicitly state its findings and conclusions regarding each. *Bowers,* at 54-55. We reiterate that, because the boy has an established custodial environment with his father, the burden of proof with respect to him is clear and convincing. The burden of proof with respect to the girl is a preponderance of the evidence.

Defendant argues that the trial court erred in not stating the factual basis for its findings and conclusions with more particularity. We disagree. Although the trial court's findings are terse, a trial court is not required to "comment upon every matter in evidence or declare acceptance or rejection of every proposition argued." Its findings were sufficient.

Defendant also argues that the trial court erred in granting custody of both children to plaintiff. We agree, and find that plaintiff should have custody of the boy and that defendant should have custody of the girl.

The court determined that factor a, the love, affection, and other emotional ties between the parties and the child, favored plaintiff. The court stated that defendant appeared to act more out of a sense of obligation and the father more out of a sense of love and commitment. The court noted that the emotional ties between mother and daughter were not what "one might expect" and certainly not as strong as those between the father and son.

We have reviewed the record carefully and have been unable to find any evidence to support the trial court's analysis. The evidence on the record shows strong emotional ties between each child

and each parent. We find that this factor does not favor either party.

Regarding factor b, the capacity and disposition of the parties to give the child love, affection, guidance, and continuation of its education and religion, the trial court again found for plaintiff. The court stated that the mother was more superficial and the father more consistent. It also noted that the mother had once changed the girl's school when her baby-sitter had moved.

We agree that there was testimony on the record supporting this last observation. However, we note that the child was only in kindergarten and that the baby-sitter involved was defendant's sister. We are unable to find any evidence to support the finding that the mother was more superficial and the father more consistent.

On the question of guidance, we note that the mother occasionally allowed the boyfriend of her sixteen-year-old roommate to spend the night and occasionally allowed her own boyfriend to spend the night. In the same regard, we note that plaintiff allowed the boy's baby-sitter to move in with him while they were living in California, that he had a drinking problem, that he was verbally abusive to the mother in front of the children, and that he lied during a substance abuse assessment about not having a prior conviction of operating a vehicle while under the influence of alcohol. We note especially that the incident leading to plaintiff's second OUIL conviction occurred after the first trial, where plaintiff testified that he had his drinking problem under control. Thus, we conclude that this factor favors the mother.

Factor c, the parties' capacity and disposition to provide the child's material needs, also was weighed in plaintiff's favor by the trial court. We

also find that conclusion to be against the great weight of the evidence.

In 1989, the father earned about $15,000, while the mother earned about $14,000. The mother is an assistant manager with a fast-food chain of restaurants and regularly attends managerial classes. She has been with the same company since returning to Michigan and has been promoted regularly. She expected to be eligible for health insurance in the near future. With regard to the parties' disposition to provide the children's material needs, however, both parents participated in an unseemly tug of war over the girl's clothes when custody was changed from one to the other and back again.

On the other hand, since returning to Michigan, the father has held about seven jobs, mostly in the construction trades. He had health insurance covering the children through his latest job. However, with regard to his disposition to provide the children's material needs, plaintiff had not informed defendant that the children were insured through his job and thus his disposition to provide them with medical care depended upon whether he had physical custody. Overall, though, we find that the parties are about equal regarding this factor.

Regarding factor d, the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity, the trial court again found for the father. It is undisputed that the son has lived in a stable environment with his father and grandparents since June 1988. The court also found that, during the same period, defendant had lived with her sister and her sister's three children and boyfriend. It found that defendant then had a sixteen-year-old roommate whose boyfriend was an occasional visitor. Defendant's own boyfriend was also an occasional visitor. Fur-

ther, most recently, defendant was planning to share her apartment with a nineteen-year-old female college student from Africa.

Having reviewed the record carefully, we agree that these findings are supported by evidence. However, we note that the father's stated intention is to move out of the stable environment of his parents' house and perhaps out of the state. Further, his frequent job changes and his drinking problem also detract from his stability. In sum, we find that this factor does not favor either party.

Regarding factor e, the permanence as a family unit of the existing proposed custodial home, the court found in favor of plaintiff. The same comments indicated for factor d apply here. This factor does not favor either party.

The court determined that there was no difference between the parties regarding moral fitness, factor f. We have reviewed the record carefully and find that this conclusion is against the great weight of the evidence.

As noted before, the father has evidenced a drinking problem, including two convictions of OUIL. He was verbally abusive and threatening to the mother in front of the children, he lied about his past alcohol record, he lived with his child's baby-sitter while in California, and he allowed his son to drink from his beer. On the other hand, the mother allowed her boyfriend and her roommate's boyfriend to spend the night occasionally. On balance, we find that this factor favors the mother.

Regarding the parties' mental and physical health, factor g, the trial court found that, although neither suffered from a physical illness, the father was mentally and emotionally better suited to care for the children. The court came to this conclusion because defendant appeared "rather casual, somewhat emotionally detached" in that,

for example, she could not recall the name of her daughter's current baby-sitter. After reviewing the record, we conclude that this finding is against the great weight of the evidence.

Initially, we note that the mother did in fact recall the baby-sitter's name and stated that "I just know her as Mrs. Brown. I've known her name. It's Charlene or Char or ——." This answer by no means supports a finding that the mother is somehow not mentally healthy. On the other hand, we find that plaintiff's drinking history and his outbursts against the mother are relevant to his mental health. We conclude that this factor favors the mother.

Regarding factor h, the home, school, and community record of the child, the court noted no significant difference between the parties. This finding is supported by the record.

Regarding factor i, the reasonable preference of the child, the trial court stated that it had interviewed each child and found this factor to weigh in plaintiff's favor. We have reviewed the suppressed transcript of the court's interview with each child and find that the court's conclusion regarding one of them is against the great weight of the evidence.

During the interview, one of the children did indeed express a preference for plaintiff, although not strongly. The other child, however, adamantly refused to chose between the parties. This factor favors plaintiff regarding one child but favors neither party regarding the other child.

Regarding factor j, the willingness and ability of each parent to facilitate and encourage a close relationship between the child and the other parent, the court found the parties equal. We have reviewed the record carefully and again find this

conclusion to be against the great weight of the evidence.

The testimony showed that the father insulted, berated, and threatened the mother in front of the children. The mother also testified that the father allowed the boy to make other plans for those weekends when the child was supposed to be visiting her, while defendant made sure that the girl made no plans for the weekends when she was supposed to go see her father. We find that this factor favors defendant.

Regarding any other factors considered relevant by the court, k, the trial court emphasized that it was highly desirable to raise the children together. We agree. However, we note that, by the parties' own choice, these children have been raised apart during most of their lives. We also note that, although both parties have requested custody of both children and have expressed a preference that they be raised together, neither has taken an all or nothing attitude in this regard.[2] This factor does not favor either party.

In conclusion, we find that the evidence is not clear and convincing that the boy's established custodial environment with his father should be changed. Regarding the girl, we find that the preponderance of the evidence favors that she be placed in her mother's custody.

Affirmed in part and reversed in part.

NEFF, J., concurred.

REILLY, J. (concurring). I believe that the eight months between October 5, 1990, and June 18, 1991, in which the daughter lived with her father pursuant to an order granting him custody, and

---

[2] Our prior opinion in this case is not to the contrary. See Bowers, at 52-53.

during which the child looked to her father alone for "guidance, discipline, the necessities of life, and parental comfort" in a relatively stable, settled atmosphere was of sufficient duration to constitute an established custodial environment under § 7(1) (c) of the Child Custody Act, MCL 722.27(1)(c); MSA 25.312(7)(1)(c). Unlike the facts in *Baker v Baker*, 411 Mich 567, 578-583; 309 NW2d 532 (1981), where the son was shifted from place to place and from parent to parent during a 5½-month period in which the marriage relationship disintegrated, the daughter in this case spent an uninterrupted eight months with her father pursuant to court order following trial. It was not until June 18, 1991, when the Court of Appeals reversed the custody order and remanded the case for a second trial, that the permanence of this relationship was jeopardized. I agree with the trial court that there was an established custodial environment with the father during the eight-month period in which the custody order was in effect. Moreover, that custodial arrangement continued until the mother kept the child, following visitation in September 1991, a few weeks before the second trial.

However, I agree with the majority that the findings of fact are against the great weight of evidence. Although the mother is not without fault, I believe there was clear and convincing evidence that the best interests of the child would be served by granting custody of the daughter to the mother.

Accordingly, I concur in the result.