# STATE OF MICHIGAN

# COURT OF APPEALS

SHELLEY ROZMIAREK,

        Plaintiff-Appellee,

v

JOSEPH ROZMIAREK,

        Defendant-Appellant.

UNPUBLISHED
July 19, 2018

No. 339976
Monroe Circuit Court
Family Division
LC No. 13-036428-DM

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

Shelley and Joseph Rozmiarek have battled over custody of their young daughter, GR, since their 2014 divorce. In this latest installment, Joseph attempted to secure physical custody of GR on an 80-20 split based on a CPS-substantiated claim of sexual abuse against Shelley's live-in boyfriend, Matt Dickerson. The circuit court refused to consider any evidence regarding GR's description of the sexual abuse, ignored or inadequately considered relative factors affecting the best interests of the child, and denied Joseph's motion to amend the custody order. The court went a step further and lifted its temporary order precluding contact between GR and Dickerson. The court did not meet its duty to protect the child and ensure that her custody arrangement serves her best interest. Accordingly, I would vacate the circuit court's orders and remand for further consideration.

## I. BACKGROUND

Shelley and Joseph were married one month before GR was born in March 2013. Their marriage was short; their divorce was final on July 1, 2014. The judgment of divorce granted Shelley full physical custody of GR, but three months later, the parties consented to equally shared custody on a rotating week basis. *Rozmiarek v Rozmiarek*, unpublished per curiam opinion of the Court of Appeals, issued July 26, 2016 (Docket No. 330980), p 1.

Approximately two weeks before entering the consent order, Shelley drove while under the influence of morphine and physically assaulted her oldest daughter, who was then 17. Child Protective Services substantiated a case against Shelley and removed GR from Shelley's home for a short time. Shelley eventually pleaded no contest to a misdemeanor child abuse charge, was sentenced to one year of probation, and was court ordered to perform three days of

-1-

community service, undergo a psychological evaluation, and complete a 26-week domestic violence program. *Id*. at 1-2.

Joseph filed motions seeking full or increased custody of GR on April 9 and October 7, 2015. In addition to Shelley's substance use and abuse of her 17-year-old daughter, Joseph relied on Shelley's failure to attend GR's medical appointments and to give her prescribed allergy medications, her decisions to smoke and keep a pet despite GR's severe allergies, allowing GR to ride in a boat without a life jacket, and exposing the child to a new paramour— Matt Dickerson—in violation of the divorce judgment's background check and waiting period requirements. *Id*. The circuit court denied Joseph's motions, refusing even to find proper cause or a change in circumstances as Joseph was aware of many of these issues before consenting to the 50-50 custody arrangement. *Id*. at 2-3.

Joseph appealed the circuit court's second order rejecting his bid for custody. In a 2-1 split decision, this Court affirmed. In doing so, the majority noted that Shelley's "altercation" with her teenage daughter occurred before entry of the consent custody order and held that the evidence did not clearly preponderate against the circuit court's conclusion that the facts did not rise to a sufficient level to overlook the motion's timing. *Id*. at 5-6.

The dissent reasoned that the criminal charges levied against Shelley and her no-contest plea "constituted an escalation of the issue that existed when the court entered the last custody order." *Rozmiarek v Rozmiarek*, unpublished opinion of the Court of Appeals, issued July 26, 2016 (Docket No. 330980) (JANSEN, J., dissenting), p 2. The dissent further reasoned that "the incident of child abuse" against Shelley's older daughter "increases the risk that GR will be subjected to abuse" in the future, a change in circumstances warranting a new look at the custody arrangement. *Id*. at 3.

Matters did not improve thereafter. On July 28, 2016, Shelley failed to bring GR to an appointment with a specialist to address her hemangioma. Joseph complained that Shelley responded to only approximately 10% of his messages regarding GR and failed to communicate during parenting time transfers regarding important medical information. Joseph suspected that Shelley was not regularly giving GR her medications. Shelley brought Dickerson to GR's doctor appointments, asserting that she was afraid to be alone with Joseph. And the pair could not agree on preschool or daycare arrangements for GR.

On January 23, 2017, Joseph filed another motion to change custody, alleging that four days earlier GR told him that Dickerson had touched inside her "pee pee." Joseph had taken GR to the emergency room for examination and the hospital contacted CPS. After interviewing GR and reviewing the medical records, CPS substantiated the sexual abuse claim. *The court precluded the CPS investigator's testimony regarding GR's statements about the abuse.* CPS instructed Shelley to remove Dickerson from her home and to prevent all contact between Dickerson and her child. Shelley complied, but continued her romantic relationship with Dickerson when GR was not in her custody. CPS placed Dickerson on the central registry for child abuse and neglect and warned Shelley that although it was closing the matter, a new CPS action could be initiated if Dickerson was found in GR's presence. The prosecutor, however, declined to bring criminal charges against Dickerson.

Shelley believed that Joseph coached GR to accuse Dickerson of sexual abuse and requested counseling for the child to find the root of the allegations. Although she requested counseling, Shelley delayed in agreeing to a therapist. As a result, GR had only visited Dr. Kenneth Cunningham four times leading up to the evidentiary hearing. *The court also precluded Dr. Cunningham from testifying about GR's statements regarding the abuse.*

Joseph testified at the evidentiary hearing that GR told him, "Daddy, Matt touches my pee pee," "inside my pee pee," and mimed digital-vaginal penetration. Joseph described that GR was distraught and upset when she made this revelation. About six weeks earlier, Joseph asserted, GR had complained about discomfort in her vaginal area and he took her to the pediatrician. At that time, GR's vaginal area was "fire engine red." Ultimately, the court indicated that *it would not consider GR's statements to Joseph* because they were hearsay and did not fall within the proffered exception to the hearsay rule—excited utterance.

At the close of the hearing, the circuit court again denied Joseph's motion to amend the custody arrangement. The court agreed that the substantiated sexual abuse allegations provided a change of circumstances or proper cause to reconsider the child's best interests. However, the court found that the parents remained equal under the best-interest factors of MCL 722.23 and therefore maintained the equal parenting time arrangement.

## II. CHILD'S OUT-OF-COURT STATEMENTS

I discern no error in the circuit court's preclusion of statements made by GR to the CPS investigator and Dr. Cunningham. Although highly relevant to the matter at hand, no hearsay exception applies to permit the admission of GR's out-of-court statements to these individuals. I am troubled, however, by the exclusion of Joseph's testimony describing his young daughter's revelation of the abuse against her. I agree with the majority that GR's statements to her father do not fall within the hearsay exception for excited utterances and therefore could not be admitted for the truth of the matter asserted. However, the statements should have been admitted for a different purpose—to establish the impact the statements, whether true or not, had on her parents.

An out-of-court statement is only considered hearsay if it is "offered in evidence to prove the truth of the matter asserted." MRE 801(c). Out-of-court statements are admissible if used for other purposes. "An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c)." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014). See also *Hilliard v Schmidt*, 231 Mich App 316, 318; 586 NW2d 263 (1998) (the defendant's negative comments regarding the plaintiff were admissible "to show effect . . . on the parties' children"); *People v Byrd*, 207 Mich App 599, 603; 525 NW2d 507 (1994) (statement admitted to explain that it induced the defendant to take certain actions).

The content of GR's statement, whether true or not, led Joseph to take her to the emergency room and triggered the CPS investigation. Shelley, on the other hand, did not believe GR's statement when she learned of it, and instead assumed that Joseph had coached her. As a result, she continued dating Dickerson even after CPS required him to move out of their shared home. Knowing what GR said was necessary to gauge the propriety of Joseph's and Shelley's

reactions. The circuit court disregarded the substance of GR's accusation and therefore made no consideration of Joseph's and Shelley's response in assessing whether alteration of the custodial arrangement would be in GR's best interests. This failure leaves a hole in the record that the circuit court should fill before any appellate court takes up the matter.

### III. BEST INTEREST ANALYSIS

The circuit court also did not give adequate consideration to the statutory best interest factors of MCL 722.23. When reconsidering an award of custody, a court must evaluate each of the statutory best interest factors and explicitly state its findings and conclusions on the record. *Bowers v Bowers*, 198 Mich App 320, 328; 497 NW2d 602 (1992). It is appropriate for the court to determine that certain factors are not relevant to the dispute before it, as long as the court places that finding on the record. *Pierron v Pierron*, 486 Mich 81, 91; 782 NW2d 480 (2010). We review the circuit court's factual findings, including its finding that certain factors are irrelevant, under the great weight of the evidence standard and may only overrule the lower court's findings when the evidence "clearly preponderates in the opposite direction." *Id*. at 85 (quotation marks, citation, and alteration omitted).

The circuit court incorrectly limited its review of the best interest factors to events occurring since the last custody order. In doing so, the court conflated the temporal requirement related to the establishment of a change in circumstances to modify a custody order with the analysis of whether a change in the custodial arrangement would be in the child's best interests. While a change in circumstances must exist since the entry of the last custody order in order to modify that custody order, no such time requirement exists for evaluating a proper cause or the best-interest factors. See *Vodvarka v Grasmeyer*, 259 Mich App 499, 514-515; 675 NW2d 847 (2003). Indeed, limiting the evaluation of the best-interest factors to the time since the previous custody order would not promote the child's best interest.

As a result of the circuit court's self-imposed temporal limitation on its best-interest analysis, the court ignored important facts impacting the child. For example, the circuit court found the parties equal under MCL 722.23(d), "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," and (e), "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." The court failed to consider that one of GR's elder sisters had been removed from their mother's custody due to child abuse and therefore was no longer part of GR's family unit. Also directly impacting the stability of GR's home life with Shelley is the fact that CPS briefly removed GR from Shelley's care during its prior investigation into the child abuse allegations. Although this occurred prior to the court's last custody order, it was still a factor weighing against Shelley in considering the child's best interests.

The court further failed to take into account highly relevant information that arose after the last custody order. In considering the permanence of the family unit, the court did not acknowledge that Shelley was living in a home purchased by Dickerson and that Dickerson still paid a large share of the household bills. When the circuit court lifted its temporary injunction against Dickerson, CPS had not rescinded its warning that it would resuscitate its intervention if Shelley allowed Dickerson contact with GR. The record evidence supports that Shelley and her

children could be forced to relocate at any time, another strike against Shelley in relation to factor (e).

The circuit court also erroneously determined to "make[] no finding" regarding the moral fitness of the parties. MCL 722.23(f) was highly relevant in this matter. The court avoided its duty to assess the credibility of the witnesses, to find whether Joseph coached GR to lie or whether Shelley unreasonably disregarded GR's accusation as it conflicted with her romantic interests. Additionally, Shelley's prior substance use and physical abuse against another child should come into play in weighing the moral fitness of the parties, yet the circuit court ignored this evidence.

On a related note, the circuit court omitted any reference to Shelley's abuse of her 17-year-old daughter when weighing MCL 722.23(k), "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." Shelley pleaded no contest to the assault charges against her, essentially conceding that she had committed an act of domestic violence. If GR's accusation of sexual abuse is believed, Shelley would have continued a pattern of domestic violence, this time by failing to protect her child from her boyfriend. In any event, this factor was not irrelevant to the consideration before the court.

Ultimately, however, the issue comes down to credibility—an assessment of the parties' motives and the reasonableness of their actions. This Court is not equipped to evaluate these factors in the first instance. Accordingly, I would remand to the circuit court for further consideration of the best interest factors, taking into account the effect on the parties of GR's description of the abuse and the entire record of evidence impacting the custody decision.

/s/ Elizabeth L. Gleicher

-5-