*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANA MARIE BAUER,

        Plaintiff-Appellee,

v

TIMOTHY JOHN WAIDELICH,

        Defendant-Appellant.

UNPUBLISHED
August 6, 2019

No. 345756
St. Clair Circuit Court
LC No. 14-000583-DM

Before: TUKEL, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

In this child custody matter, defendant-father appeals as of right the trial court's order granting plaintiff-mother's motion for sole legal custody of their two minor children, HW and AW. Defendant argues that the trial court (1) failed to consider the children's reasonable preferences, (2) failed to make a threshold finding regarding a change in circumstances before considering the children's best interests and (3) that no such change in circumstances existed, (4) improperly considered the routine medical decisions at issue to have a bearing on joint legal custody, and (5) based its determination of the best interests of the children on factual findings that were against the great weight of the evidence. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Following their acrimonious divorce, the couple entered into a custody battle, wherein they repeatedly petitioned the court system to help resolve their parenting disputes. In the instant matter, the parties filed cross-motions seeking to modify the custody order and alter the parenting time schedule. Both parents requested sole legal custody in order to make medical and educational decisions for the children. The trial court held numerous evidentiary hearings over the course of one year, and heard testimony from plaintiff, defendant, plaintiff's counselor, the children's pediatrician since 2010, the children's counselor since 2015, the children's pediatric infectious disease doctor, defendant's therapist, the children's school learning specialist, the children's school nurse, AW's school teacher, and considered the video deposition of the children's ear, nose, and throat (ENT) specialist.

The hotly disputed issue in this case is the medical care of the children. From October 2016 to May 2017, the two children visited the pediatrician a total of 28 times. In between those visits, defendant repeatedly took the children to after-hours clinics seeking antibiotics when the children experienced symptoms like stuffy noses and sore throats. Most of those visits resulted in one or more of the following diagnosis: ear infections, strep throat, stuffy nose, sore throat, and sinus infection. Plaintiff became concerned with defendant's aggressive approach to the children's medical care, which prompted her to seek sole legal custody. Defendant responded with his own motion seeking the same.

The parties disagreed over how to characterize the nature and frequency of these medical visits. Plaintiff believed the visits were medical child abuse and lodged a complaint with Child Protective Services, which declined to investigate. Plaintiff testified that during their marriage defendant wanted her to be sick all the time. Since their divorce, defendant would routinely take the children to after-hours clinics and not notify plaintiff of the visits until it was too late for her to attend. Defendant refused to share information with her about the clinic visits, and plaintiff found out information by cold calling various facilities around the area. Plaintiff admitted that, except for the clinic visits, she consented to all of the children's medical treatments. Plaintiff testified that during HW's doctor's appointment on March 3, 2017, the ENT raised the issue of sinus surgery which upset HW. Plaintiff moved to comfort HW and defendant grabbed her hand and squeezed as hard as he could. Plaintiff was afraid to be alone in doctor's offices with defendant after that, and defendant stalked plaintiff in the past. Plaintiff further testified that defendant engaged in inappropriate behavior by spending too much time with the children at their school, and by taking pictures of AW through her classroom window. Additionally, defendant would give the children sweets even though HW was at risk for diabetes. Plaintiff did not confront defendant about his behavior because she was afraid it would exacerbate these problems.

Defendant believed that each visit was made out of medical necessity. Plaintiff's failure to continue the children's antibiotic regimen during her parenting time resulted in the children relapsing during defendant's parenting time. Defendant testified that he never supported sinus surgery for HW, and has always tried his best to communicate with plaintiff regarding the children's medical treatment and requested mediation on these matters, which plaintiff declined. Defendant never sought treatment for the children without plaintiff's consent, and he always tried to see the children's pediatrician before taking the children to a clinic. Defendant used to walk his children into their school to comfort them during the divorce. However, he stopped that and only continued to walk them in so that he could use the restroom, help the children carry in their projects, or help install a server that he had donated to the school. Defendant testified that he never grabbed plaintiff's hand.

The various doctors who testified generally agreed that defendant was aggressive in seeking treatment for his children, but that he acted appropriately and did not cross the line into medical abuse. The children's counselor testified that, although she was not capable of diagnosing defendant with Munchausen's syndrome by proxy, defendant did not display any of the traits associated with that disease. Defendant's therapist testified that he did not have Munchausen's syndrome by proxy. Plaintiff's counselor testified that despite having never met the children or defendant, she believed that defendant bullied plaintiff and that "emotional violence" was present during the parties' marriage.

-2-

The various school officials testified that HW was not receiving dyslexia testing because the parties had not agreed whether HW should receive such testing through a public school or a private service. Defendant's habitual disruptions into the children's school routine was addressed, and defendant's attention to his children's medical needs was described as "a little excessive."

The trial court granted plaintiff's motion and issued its findings of facts and conclusions of law supporting its decision. This appeal followed.

## II. PRESERVATION & STANDARD OF REVIEW

These issues before us involve both the factual findings and decision of the trial court. A party need not take any special action to preserve an objection to either. MCR 2.517(A)(7); *Reed v Reed*, 265 Mich App 131, 150, 163; 693 NW2d 825 (2005).

"In child custody-disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. The great weight of the evidence standard of review instructs that "the trial court's determination will be affirmed unless the evidence clearly preponderates in the other direction." *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). In child custody matters, an abuse of discretion occurs where the result is " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). "Clear legal error" occurs when the trial court chooses, interprets, or applies the law incorrectly. *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994). This Court defers to the trial court's credibility determinations. *Pierron I*, 282 Mich App at 243.

## III. ANALYSIS

Defendant advances several arguments on appeal. Each is discussed in turn.

### A. REASONABLE PREFERENCES

Defendant argues that the trial court committed error requiring reversal when it failed to conduct an interview and consider the reasonable preferences of the children and let the parties stipulated that no interview was necessary or desirable. We disagree.

The Child Custody Act requires that the court consider the reasonable preference of the child, if one exists. *Maier v Maier*, 311 Mich App 218, 224; 874 NW2d 725, 729 (2015), citing MCL 722.23(i). This is true regardless of whether the parties wished for an interview. *Kubicki v Sharpe*, 306 Mich App 525, 544–45; 858 NW2d 57, 68 (2014). "One of the . . . factors a trial judge must consider in a custody dispute is the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference." *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991) (quotation marks and citation omitted). "Children of six, and definitely of nine, years of age are old enough to have their preferences given some weight in a

custody dispute, especially where there was a prior custody arrangement." *Id.* at 55–56, 475 NW2d 394. At the time the evidentiary hearing began, the children were 8 and 9 years old, and as such, were "definitely . . . old enough to have [their] preference[s] [ ] given some weight . . . ." *Id.*

Defendant argues that under *Kubicki v Sharpe*, 306 Mich App 525, 56; 858 NW2d 57 (2014), a trial court's failure to interview a child constitutes error requiring reversal. Indeed, in that case, the trial court's failure to conduct an interview of the child and consider the child's reasonable preferences resulted in error requiring reversal. *Id.* However, "*Kubicki* did not announce a new legal mandate that every child over a certain age be interviewed to ascertain a reasonable preference." *Maier*, 311 Mich App at 224. Rather, this Court has recognized that not all children have the capacity to form such a preference. "[A] child's presumed capacity [can] be compromised by circumstances peculiar to that child's life." *Id.* at 225. "Additionally, an interview is merely one avenue from which to adduce a child's capacity to form a preference and the preference itself, and not the sine qua non from which that determination must be made." *Id.*

Here, the trial court considered whether interviewing the children would be necessary or beneficial and ultimately agreed with the parties that an interview was not necessary. The trial court reasoned that given the ages of the children and their maturity level, their input into the vary narrow issue impacting their legal custody as to who would be the best decision-maker with respect to their medical treatment would not be very beneficial to the trial court in reaching its decision. The trial court specifically noted that the parents were able to agree on scheduling issues, but disagreed on "bigger picture things," and that the abstract nature of the issue of appropriate medical care impacting the children's legal custody would not be illuminated by an interview with the children who tend to focus on concrete matters. The court emphasized the nature of the difference between the legal authority to be the decision maker for the children and the authority to participate in concrete activities with the children. The trial court additionally noted that an interview only would serve to heighten the children's anxiety, and that any input from the children would not be weighed heavily in its determination anyway. The record, therefore, supports a finding that the abstract nature of the narrow issue of legal custody focused specifically on medical care and the maturity of the children were "circumstances peculiar" to the lives of these children which would compromise their presumed capacity to form a preference. *Maier*, 311 Mich App at 225. Because "an interview is *merely one avenue* from which to adduce a child's capacity to form a preference," we cannot say that the trial court's decision not to interview the children in this case constitutes error requiring reversal. *Id.* (emphasis added).[1]

---

[1] Because "an interview is *merely one avenue* from which to adduce a child's capacity to form a preference," *Maier*, 311 Mich App at 225 (emphasis added), the trial court is not required to conduct an interview in *every* instance with *all* children as to their preferences simply because they have the capacity to form opinions *generally*. As in this case, there may be instances where children lack the capacity to make an informed decision as to preference due to the nature of the custody issue before the trial court. Here, it would have been inappropriate for the trial court to require the minor children to weigh in on an issue that, by its nature, the trial court determined

## B. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

Defendant argues on appeal that the trial court committed error requiring reversal when it failed to make a finding on whether a "proper cause" or "change in circumstances" occurred before conducting the custody hearing. Defendant argues that this threshold was not met because the parties have experienced some disagreements over the medical care and treatment of the children since the last custody order, but for the most part, they agree on which doctors the children saw and which tests they underwent. We disagree.

A party seeking a change in the custody of a child is required, as a threshold matter, to first demonstrate to the trial court either proper cause or a change of circumstances. MCL 722.27; *Killingbeck v Killingbeck*, 269 Mich App 132, 145; 711 NW2d 759 (2005); *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004). "If a party fails to do so, the trial court may not hold a child custody hearing." *Corporan v Henton*, 282 Mich App 599, 603–04; 766 NW2d 903, 906 (2009). This Court has explained the meaning of "proper cause" and "change of circumstances":

> [T]o establish "proper cause" necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. When a movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors.
>
> * * *
>
> [I]n order to establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Vodvarka v Grasmeyer*, 259 Mich App 499, 512–514; 675 NW2d 847 (2003) (emphasis in original).]

---

the children were unlikely to comprehend due to their ages and maturity levels. The trial court concluded that the appropriateness of medical treatment, including decisions regarding when, where, and how often to seek treatment for various illnesses, was not a topic on which these young children possessed a capacity to make an informed decision, and under these circumstances, we cannot conclude that the trial court erred.

Although the threshold consideration of whether there was proper cause or a change of circumstances might be fact-intensive, the court need not necessarily conduct an evidentiary hearing on the topic. *Corporan*, 282 Mich App at 605, citing *Vodvarka*, 259 Mich App at 512.

Here, the trial court decided to hold an evidentiary hearing on the topic and the evidence adduced also was considered in making a determination regarding the children's best interests. This Court has not held that a separate hearing must be conducted before a custody decision may be revisited, "nor is one necessarily required." *Mitchell*, 296 Mich App at 518, citing *Vodvarka*, 259 Mich App at 512. "The trial court is merely required to preliminarily determine whether proper cause or a change of circumstances exists before reviewing the statutory best-interest factors with an eye to possibly modifying a prior custody order" *Id*.

The trial court considered whether this threshold had been met in its finding of fact and conclusions of law before it considered the best-interest factors. The trial court was not required to hold a separate evidentiary hearing on the matter, nor was the trial court required to issue a separate ruling on the matter. Thus, defendant's argument lacks any basis in the law.

Additionally, defendant's argument that the threshold was not met lacks merit. "To establish proper cause, the moving party must establish by a preponderance of the evidence an appropriate ground that would justify the trial court's taking action. Appropriate grounds should include at least one of the 12 statutory best-interest factors and must concern matters that have or could have a significant effect on the child's life." *Mitchell*, 296 Mich App at 517.

The trial court found that proper cause was established because "the children's health and education are two very important subjects relating to custody." When parents cannot agree on a child's medical treatment and educational course, these topics can have significant effects on a child's well-being. *Kloenhamer*, 291 Mich App at 666. The parties' failure to cooperate resulted, at the time of the evidentiary hearing, in the children not having their annual physical, vision, or dental appointments. In light of these circumstances, we cannot conclude that the trial court erred when it found that the threshold had been met.

## C. ROUTINE MATTERS

Defendant argues on appeal that treatment of the children's allergies, ear infections, and related illnesses are routine matters that should be handled by the parent exercising parenting time, and are not important matters that implicate legal custody rights. We disagree.

Although significant disputes over a child's medical treatment and education can be sufficient to warrant review of the custody order, see *Kloenhamer*, 291 Mich App at 665–666, disputes over minor allegations of contempt, visitation, or flexibility in parenting time are insufficient to constitute proper cause or a change of circumstances. *Vodvarka*, 259 Mich App at 509–510.

This case straddles the line. On the one hand, none of the medical issues that the children faced posed a significant risk to their overall health. They suffered from runny noses and sore throats during a Michigan winter, and the bulk of the parents' complaints about each other were centered on how they treated each other during the scheduling and attendance of the children's medical appointments, rather than on the well-being of the children themselves. On the other

hand, the sheer number of visits over a short period of time is concerning, and defendant's insistence on seeking specialist treatments for the children for even the most routine of ailments certainly raises the issues beyond normal parenting. Most convincingly though, is that the parties' failure to cooperate resulted in the children having not had their annual physical, vision, or dental appointments at the time of the evidentiary hearing. Perhaps such appointments are routine, but the failure of the parties to work together to meet the children's basic medical needs cannot be classified as unimportant or insignificant. See *Kloenhamer*, 291 Mich App 666 (finding that review of a custody order was warranted where the "parties' disagreements [had] escalated and expanded to topics that could have a significant effect on the child's well-being" such as how best to treat the child's asthma and allergies). Therefore, defendant's claim of routineness fails.

## D. BEST-INTEREST ANALYSIS

Defendant next argues that the trial court improperly found that certain best-interest factors weighed against defendant.

"The trial court may not modify or amend a previous judgment or order or issue a new order 'so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.' " *Kaeb v Kaeb*, 309 Mich App 556, 567; 873 NW2d 319 (2015), quoting MCL 722.27(1)(c). MCL 722.23 states:

[The] "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Defendant takes issue with the trial court's weighing of factor (c) because the parties agreed on the vast majority of the children's medical care issues. However, here plaintiff argued that defendant's actions were inappropriate and dangerous to the children who were being subjected to unnecessary medical tests and treatments. Defendant argued that he was providing appropriate care under the circumstances where plaintiff repeatedly failed to follow through with the medicine regimen and the children repeatedly suffered relapses. The various doctors generally agreed that defendant was aggressive in seeking treatment for his children, but that he acted appropriately and did not cross the line into medical abuse. Essentially, the parties were simply unable to agree on the nature or treatment of their children's illnesses. Thus, this case came down to a credibility contest, and considering that the parties have appeared before the same circuit court judge since March 2014, the trial court was in a particularly strong position to weight the parties' credibility. In light of these circumstances, we cannot conclude that this determination was in error.

Moreover, defendant's argument that factor (c) should not count against him where the parties were in agreement on most of the medical decisions misses the point. This factor does not focus on whether the parties can agree about medical care, but whether the parties can actually provide it. Regardless of how often the parties were once able to agree on this issue, by the time of the evidentiary hearing, the parties' failure to cooperate meant that the children had not had their annual physical, vision, or dental appointments. Accordingly, defendant's argument is unpersuasive.

Defendant also argues that the trial court erred in its consideration of factor (h) because plaintiff was more culpable in creating the delay for HW's dyslexia testing. Defendant ignores the fact that the trial court also considered defendant's disruptive behavior at the children's school. The trial court noted that defendant's habitual intrusions into the children's school routine was impeding HW's ability to develop relationships with his peers. In light of these facts, we cannot conclude that the trial court erred.

Concerning factor (j), defendant argues on appeal that the trial court erred when it found that this factor weighed in favor of plaintiff because plaintiff was the uncooperative party. Defendant points out that plaintiff refused defendant's offer to mediate this dispute, and that there was no evidence that defendant tried to bully plaintiff via text messages. However, plaintiff explained her reluctance to mediate. She believed that the issues presented were

susceptible to compromise, and therefore, mediation would not be appropriate. The trial court found this persuasive, and considering that the trial court was in a unique position to assess the dynamics and dysfunctions between the parties, we cannot conclude that the trial court erred.

Defendant argues that the trial court erred when it weighed factor (k) in plaintiff's favor because there was no evidence of domestic violence. Defendant contends that plaintiff's claims of physical aggression were exaggerated and plaintiff's therapist's testimony regarding "emotional violence" was made without any personal knowledge of defendant.

This factor concerns "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). Defendant's argument regarding plaintiff's counselor's testimony merely speaks to the weight of that evidence, and there is no record evidence to conclude that the trial court improperly weighed this testimony. Rather, the trial court relied more heavily on the text messages between the parties and plaintiff's testimony that defendant grabbed her hand during an appointment with the ENT. Specifically, the trial court noted that plaintiff's version of events were substantiated by sarcastic text messages sent to plaintiff from defendant on that same day. The trial court clearly found plaintiff credible, and her account is enough to weigh this factor in her favor. See *Bowers v Bowers*, 198 Mich App 320 (1993) (finding that the father's behavior weighed against him when he was insulting, berating, and threatening the mother).

Defendant next argues that the trial court's finding on factor (l) was erroneous because it was improperly based on an assumption that defendant delayed HW's disability testing and that he sought medical treatments against plaintiff's will, when in fact, plaintiff caused the delay in testing and never objected to most of the medical treatment that defendant sought for the children. Factor (l) is "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(l). It is a "catch-all" provision. *Ireland v Smith*, 451 Mich 457, 464 n 7, 547 NW2d 686 (1996). Again, defendant misses the point. The trial court's focus was not entirely on defendant's ability to get along with plaintiff, but also was on the parties' respective abilities to cooperate with medical professionals and school authorities, and defendant's inability to modify his behavior when confronted by professionals who advise him that doing so would be in his children's best interests. Accordingly, defendant's argument fails.

Because none of these contested factors is supported by evidence preponderating in defendant's direction, the trial court's findings must be affirmed. *Kubicki*, 306 Mich App at 542 (a trial court's findings on each factor should be affirmed unless the evidence clearly preponderates in the opposite direction).

V. CONCLUSION

Affirmed.

/s/ Jonathan Tukel
/s/ Michael J. Riordan