*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of ER, Minor.

UNPUBLISHED
December 15, 2022

No. 362398
Montcalm Probate Court
LC No. 2022-034460-GM

*In re* Guardianship of GR, Minor.

No. 362399
Montcalm Probate Court
LC No. 2022-034461-GM

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

The probate court terminated PT's guardianship over two minors—ER and GR—following a guardianship review hearing. The record evidence tends to support this decision. However, a court must articulate its findings regarding the best-interest factors on the record before entering such a judgment. Accordingly, we must remand for further proceedings.

## I. BACKGROUND

In 2016, the Ionia Probate Court placed ER and GR into a guardianship with their maternal grandmother. Consistent with MCL 700.5204(2)(b), the guardianship orders stated that "the parent(s) permit the minor to reside with another person and do not provide the other person with the legal authority for the care and maintenance of the minor who was not residing with a parent when the petition was filed." In 2020, the grandmother allowed the children to move in with their second cousin—PT.

In 2022, PT filed a petition to modify the guardianships to name her as successor guardian. The court ordered the Department of Health and Human Services (DHHS) to prepare a guardianship-review report. The report outlined several concerning facts. PT and her ex-husband have four minor biological children. Several reports of child neglect had been substantiated against PT over the years, including after ER and GR moved into her home. All six of the children had

-1-

poor hygiene and truancy issues. GR was diagnosed with "bipolar and behavioral issues" but was not receiving mental-health treatment. There had been substance abuse and domestic violence issues in the home. And the family lived in a mobile home with rotting floors, frozen pipes, a broken hot water heater, and holes in the walls. A tree landed on the home during this timeframe and the family moved into another mobile home on the property that had just as many problems.

Despite these concerns, the Ionia Probate Court appointed PT as guardian for ER and GR. The case was then transferred to Montcalm Probate Court, where PT's home is located. In March 2022, Montcalm County issued letters of guardianship indicating that the guardianships would expire upon "further Order of the [c]ourt" and that annual reports would be due on March 29 of each year.

Shortly thereafter, on April 13, the Montcalm Probate Court issued an order "appointing person to review/investigate guardianship." The order stated that "[i]t appears to the court that a review/investigation of this guardianship is required" and tasked the DHHS in Montcalm County with a review of the factors under MCL 700.5207(1), which provides:

> The court may review a guardianship for a minor as it considers necessary. . . . In conducting the review, the court shall consider all of the following factors:
>
> (a) The parent's and guardian's compliance with either of the following, as applicable:
>
> (*i*) A limited guardianship placement plan.
>
> (*ii*) A court-structured plan under subsection (3)(b)(*ii*)(B) or section 5209(2)(b)(*ii*)
>
> (b) Whether the guardian has adequately provided for the minor's welfare.
>
> (c) The necessity of continuing the guardianship.
>
> (d) The guardian's willingness and ability to continue to provide for the minor's welfare.
>
> (e) The effect upon the minor's welfare if the guardianship is continued.
>
> (f) Any other factor that the court considers relevant to the minor's welfare.

The Montcalm DHHS report covered all the best-interest factors of MCL 700.5101(a), which states:

> "Best interests of the minor" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (*i*) The love, affection, and other emotional ties existing between the parties involved and the child.

(*ii*) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.

(*iii*) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(*iv*) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(*v*) The permanence, as a family unit, of the existing or proposed custodial home.

(*vi*) The moral fitness of the parties involved.

(*vii*) The mental and physical health of the parties involved.

(*viii*) The child's home, school, and community record.

(*ix*) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(*x*) The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.

(*xi*) Domestic violence regardless of whether the violence is directed against or witnessed by the child.

(*xii*) Any other factor considered by the court to be relevant to a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.

The DHHS expressed concerns with the children's hygiene and truancy, PT's history of substantiated neglect reports, PT's failure to secure mental health services for GR, and the condition of PT's home. In addition to the earlier concerns, the report noted that PT had recently hired an attorney and had denied access to DHHS investigators who came to inspect the home. Truancy actions also had been filed in relation to ER and GR. PT and GR did not appear at a truancy hearing scheduled on May 10, 2022. The DHHS recommended that the children be removed from PT's custody and placed with their father, despite that they had been separated from him for several years. The DHHS further recommended that the children "complete trauma assessments, engage in counseling, and regularly attend in person learning to get the educational support they need."

The court served a notice of hearing on PT and her attorney, stating that a hearing would take place on June 8 for a "guardianship review." The hearing was adjourned when GR and ER were removed from PT's care as part of a separate neglect proceeding involving all six children.

The children were placed with their father. A new notice of hearing was served on PT and her counsel. An updated DHHS report also was prepared. The updated report indicated that ER was doing very well in his father's care, but GR was struggling. The father supported returning GR to PT's care and as a result had not secured GR mental health services. The DHHS did not agree with returning GR to PT's home, given that PT was participating in a case service plan to regain custody of her biological children.

The guardianship review hearing was conducted on July 8, 2022. The court found that it would not be in the best interests of ER and GR to continue the guardianships. The court issued orders terminating PT's guardianships over the children.

## II. ANALYSIS

We review for an abuse of discretion a probate court's termination of a guardianship. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). We review the court's underlying factual findings for clear error. *Id.* We review underlying legal conclusions de novo. *Id.* at 404.

PT contends for the first time on appeal that the court did not follow statutory procedures for ordering the guardianship-status hearing and that the hearing notice was deficient. We review these unpreserved challenges for plain error affecting PT's substantial rights. Reversal will only be warranted if the error seriously affected the "fairness, integrity or public reputation" of these proceedings. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008) (quotation marks and citation omitted).

MCL 700.5201 states: "A person may become a minor's guardian by parental appointment or court appointment. The guardianship status continues until terminated, without regard to the location from time to time of the guardian or minor ward." MCL 700.5207(1) permits a court to "review a guardianship for a minor as it considers necessary." The Montcalm Probate Court indicated that it felt review of this guardianship was necessary and ordered the DHHS to prepare a review report in anticipation of the court's review hearing as was permitted by MCL 700.5207(2). MCL 700.5207(3)(b) permitted the court to "conduct a hearing on the guardianship's status" based on the review report.

PT complains that the court could not reconsider the guardianship because PT had not been ordered to comply with any court-ordered plan first. However, MCL 700.5207(1)(a) does not require the court to first institute a remedial plan. Rather, this subsection requires the court to consider a guardian's compliance with a court-ordered plan "as applicable." Subsection (1)(a) simply was not applicable as PT was not subject to any court-ordered plans.

And the court was permitted, procedurally, to terminate the guardianship at the completion of the hearing. MCL 700.5207(3)(b)(*iii*) permits the court following the review hearing to "take an action" under MCL 700.5209, which permits termination of a guardianship.

PT contends that the hearing notice was insufficient because it did not place her on notice that the guardianship could be terminated. Again, MCL 700.5207(3)(b)(*iii*) permits a court to "[s]chedule and conduct a hearing on the guardianship's status" following the preparation of a review report. The statute expressly permits the court to "[t]ake an action described in [MCL

-4-

700.5209(2)]" at the conclusion of the hearing. MCL 700.5209(2)(a) permits the termination of the guardianship if it is deemed to be in the best interests of the children. The hearing notice placed PT on notice that the court could take any action permitted under the statutes.

Although the court followed statutory procedures in ordering the hearing, the court did not adequately articulate its findings supporting the guardianship termination on the record. The court discussed several facts that generally established that termination of the guardianship was in the children's best interests. We agree with the court's general assessment. However, a court must articulate its findings on the record when making a best-interest analysis.

As noted, relevant to cases involving the guardianship of minors, MCL 700.5101(a) defines "best interests of a minor" as "the sum total of the following factors *to be considered, evaluated, and determined* by the court." (Emphasis added). The language of MCL 700.5101(a) is identical to MCL 722.23, which outlines the best-interest factors "to be considered, evaluated, and determined" by a court in a child custody matter. This Court has repeatedly held based on this identical language that a court must consider each best-interest factor and "explicitly state its findings and conclusions" on the record. *Bowers v Bowers*, 198 Mich App 320, 328; 497 NW2d 602 (1992). See also *Rivette v Rose-Molina*, 278 Mich App 327, 329-330; 750 NW2d 603 (2008). This Court has similarly approved when trial courts make these best-interest findings on the record in unpublished cases relating to guardianship decisions.[1]

Accordingly, we must remand to allow the probate court to place its findings regarding each best-interest factor on the record. As the best interests of a child are fluid, the court must consider up-to-date information when making its decision. See *Pierron v Pierron*, 282 Mich App 222, 262; 765 NW2d 345 (2009). The probate court must act within 28 days to provide permanence for the children.

We acknowledge PT's concerns that the probate court did not adequately consider that GR and ER had minimal contact with their father for several years before they were placed with him. PT may raise her concerns on remand for the court's consideration under the best-interest factors.

We remand for the probate court to articulate its best-interest findings on the record. We retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick

---

[1] See *In re Wenzlick*, unpublished per curiam opinion of the Court of Appeals, issued June 6, 2019 (Docket No. 345480), pp 5-6; *In re Cerasoli*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2018 (Docket No. 338675), pp 5-7; *In re Guardianship of Montgomery*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2017 (Docket No. 336450), pp 1-4; *In re Young*, unpublished per curiam opinion of the Court of Appeals, issued April 9, 2013 (Docket No. 307761), p 3.

# Court of Appeals, State of Michigan

## ORDER

In re Guardianship of ER, Minor; In re Guardianship of GR, Minor

Docket Nos.    362398; 362399

LC Nos.        2022-034460-GM; 2022-034461-GM

Elizabeth L. Gleicher
Presiding Judge

Jane E. Markey

Michelle M. Rick
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the probate court must articulate its findings on the best-interests factors on the record.  These findings must be made on up-to-date information.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 14 days after completion of the proceedings.

/s/ Elizabeth L. Gleicher
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 15, 2022
Date

Chief Clerk