*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZAID SAFDAR,

        Plaintiff-Appellee,

v

DONYA AZIZ,

        Defendant-Appellant.

FOR PUBLICATION
June 23, 2022
9:25 a.m.

No. 358877
Oakland Circuit Court
Family Division
LC No. 2016-839363-DM

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

HOOD, J.

Defendant Donya Aziz appeals as of right the trial court's July 7, 2021 order denying her motion to change the domicile of her and plaintiff Zaid Safdar's minor child ("the child") to Pakistan. We affirm.

## I. BACKGROUND

This case has a long procedural history, including multiple prior appeals, regarding Aziz's ongoing efforts to change the child's domicile to Pakistan. In *Safdar v Aziz*, 321 Mich App 219, 221-222; 909 NW2d 831 (2017) (*Safdar I*), aff'd in part and vacated in part 501 Mich 213 (2018), this Court described the underlying facts and procedural history up to that point as follows:

> [Safdar] and [Aziz], both Pakistani citizens, were married in Pakistan on June 24, 2011, and relocated to the United States, where [Safdar] resided with an employment visa. In 2015, [Aziz] moved to Michigan to live with her aunt, while [Safdar] continued to reside in Maryland. The couple's only daughter was born in Oakland County on January 1, 2016, and the parties divorced on December 21, 2016. Pursuant to the judgment of divorce, the parties agreed to share joint legal custody of the minor child, while [Aziz] would maintain sole physical custody. The divorce judgment contained a provision prohibiting the exercise of parenting time in any country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. At that time, the prohibition applied to Pakistan. Challenging only the trial court's denial of her motion for attorney fees, [Aziz] filed

-1-

a claim of appeal from the divorce judgment. That appeal is pending before this Court in Docket No. 336590 [i.e., in a separate appeal from the appeal in *Safdar I*].

In March 2017, [Aziz] filed the motion to change domicile that is the subject of this appeal, expressing her desire to relocate with the minor child to Pakistan as soon as possible and claiming that Pakistan had completed steps to become a party to the Hague Convention since entry of the judgment of divorce. [Safdar] objected, arguing that the trial court lacked authority to set aside or amend the judgment of divorce while [Aziz]'s appeal from that judgment was pending before this Court. [Aziz] responded that her first appeal was limited to the issue of attorney fees and that the appeal did not preclude the trial court's consideration of custody matters. The trial court adopted [Safdar]'s position and entered an order dismissing [Aziz]'s motion for change of domicile without prejudice, reasoning that pursuant to MCR 7.208(A), it lacked jurisdiction to modify any component of the judgment of divorce.

In *Safdar I*, 321 Mich App at 222, 227, this Court held that the trial court had erred in ruling that it lacked jurisdiction to consider Aziz's motion for change of domicile and to modify the divorce judgment during the pendency of the appeal from the divorce judgment in Docket No. 336590. In *Safdar v Aziz*, 501 Mich 213, 215-216, 219; 912 NW2d 511 (2018) (*Safdar II*), the Michigan Supreme Court affirmed the result reached by this Court in *Safdar I* but vacated part of the opinion in *Safdar I* that relied on the broader of two statutory carveouts. See *id*. at 218-219 (affirming that the circuit court had jurisdiction to modify a final judgment with respect to a child custody dispute while an appeal of a divorce decree was pending but also holding that its jurisdiction was derived exclusively from MCL 722.27(1), without reference to MCL 552.17). Meanwhile, in Aziz's separate appeal from the divorce judgment, in which her sole issue pertained to the denial of her request for payment of her attorney fees, this Court affirmed the trial court's decision. *Safdar v Aziz*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2018 (Docket No. 336590) (*Safdar III*).

This Court summarized subsequent procedural developments in *Safdar v Aziz*, 327 Mich App 252, 257-260; 933 NW2d 708 (2019) (*Safdar IV*). This Court noted that, on September 27, 2017, which was shortly after the issuance of *Safdar I* but before the issuance of *Safdar II*, Aziz filed in the trial court a new motion to change the child's domicile to Pakistan. *Id*. at 257. Aziz stated that Pakistan had become a party to the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention" or "the Convention"), thereby eliminating any restriction imposed by MCL 722.27a(10).[1] *Id*. Aziz argued that a move to Pakistan

---

[1] MCL 722.27a(10) provides:

> Except as provided in this subsection, a parenting time order shall contain a prohibition on exercising parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. This subsection does not apply if both parents provide the court with written consent to allow a

-2-

would greatly improve the quality of life for her and the minor child because a secure home, an excellent international school system, and free healthcare would be available, her immediate and extended family would be nearby, and she would have greater job opportunities and a more affordable cost of living. [Aziz] emphasized her full and complete compliance with the trial court's previous orders, [Safdar]'s monthly visits with the minor child, and her willingness to expand or accommodate a more beneficial parenting-time schedule to assure [Safdar's] maintenance of a bond with the minor child. She also denied having any improper motivation for the relocation. [*Id*. at 257-258.]

In opposing Aziz's motion, Safdar argued "that Pakistan's accession to the Convention has not made it a treaty partner with the United States or a 'party' in accordance with MCL 722.27a(10)." *Id*. at 258.

At a motion hearing, the trial court "indicat[ed] that the United States' failure to recognize Pakistan as a treaty partner constituted 'a concern' and 'a big issue.' " *Safdar IV*, 327 Mich App at 258. The trial court nonetheless held a two-day evidentiary hearing regarding Aziz's motion to change domicile. *Id*. at 258-259. At the evidentiary hearing,

witnesses testif[ied] for both sides about such matters as the political and economic environment in Pakistan, the school and living conditions that would be made available to the child in both countries, the past and current history between the parties, and the procedure for, as well as the likelihood of, enforcing a United States custody order in Pakistan. [*Id*. at 259.]

On March 30, 2018, the trial court issued a written order that concluded as follows with respect to the issue regarding the Hague Convention:

For the purposes of Article 38 of the Convention, both parties agree that the United States is a contracting state, that Pakistan properly acceded to the Hague Convention, and that the United States did not take any of the required steps to declare its acceptance of Pakistan's accession. Thus, the United States has not accepted Pakistan's accession. Citizens of neither country have legal recourse, under the Hague Convention, if a parent from one country abducts a child into the other country. [*Id*. (brackets omitted).]

The trial court then thoroughly analyzed

the factors set forth in MCL 722.31(4), finding that three factors favored [Safdar], that two factors were neutral between the parties, and that [Aziz] failed to establish by a preponderance of the evidence that a change in domicile was in the child's best interests. Having determined that a change in the minor child's domicile was not

---

parent to exercise parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction.

-3-

in the child's best interests, the trial court did not proceed to an analysis of whether a change would occur in the established custodial environment. [*Id*. at 259-260.]

On appeal in *Safdar IV*, Aziz argued "that, because Pakistan has acceded to the Convention, it is now a 'party' to that Convention as required by MCL 722.27a(10) and, therefore, the proscriptions imposed by MCL 722.27a(10) no longer remain an impediment to her request for change of domicile." *Safdar IV*, 327 Mich App at 260. This Court rejected Aziz's argument. *Id*. at 262.

In particular, this Court in *Safdar IV* "conclude[d] that Pakistan's accession to the Convention—without the United States' acceptance—does not make Pakistan a party to the Convention for purposes of state law." *Safdar IV*, 327 Mich App at 264. This Court explained:

> There is no dispute that Pakistan acceded to the Convention by depositing its instrument of accession to the Convention on December 22, 2016, with the Convention entering into force for Pakistan on March 1, 2017. However, the United States *has not* recognized Pakistan's accession to the Convention. As made clear above, the Convention does not enter into force until a ratifying state accepts an acceding state's accession, and Article 35 limits the Convention's application to removals and retentions taking place after the Convention has entered into force between the two states involved. As a result, the clear and important legal effect of the United States not accepting Pakistan's accession to the Convention is that Pakistan is not bound to all the benefits and obligations imposed by the Convention when it comes to parenting-time orders arising out of the United States[.] [*Id*. at 265-266 (cleaned up; emphasis in original).]

"Accordingly, the Convention has not come into force, i.e., it is not binding between Pakistan and the United States, because the latter has not accepted the former's accession." *Id*. at 266-267. This Court concluded:

> The protective procedures and rules of the Convention are not binding between the United States and Pakistan, and as a result, Pakistan is not a "party" to the Convention as contemplated by MCL 722.27a(10). Therefore, the prohibitions of that statute remain applicable. For that reason, the trial court properly denied the motion to change domicile, and it is unnecessary to proceed with a review of [Aziz]'s remaining substantive allegations of error regarding the trial court's ruling on the motion for change of domicile. [*Id*. at 267.]

In August 2020, Aziz once again moved to change the child's domicile to Pakistan because, in July 2020, the United States had accepted Pakistan's accession to the Hague Convention, effective on October 1, 2020. Safdar opposed the motion. The trial court conducted an evidentiary hearing over the course of three days between February 2021 and March 2021.

The trial court eventually issued an opinion and order denying Aziz's motion for a change of domicile. The court noted that much of the evidentiary hearing "was devoted to whether Pakistan would comply with its treaty obligations or enacted sufficient local legislation." The court stated that these issues were "beyond the scope of the court's considerations as part of a

domicile change hearing." The court noted that Pakistan had acceded to the Hague Convention and that the United States had accepted Pakistan's accession effective on October 1, 2020. The court concluded:

> Given that the Convention is in place between the United States and Pakistan, and that the United States voluntarily accepted Pakistan's accession to the treaty, this court defers to the determination of the other branches of government that Pakistan has taken all appropriate steps to comply with the treaty's requirements.

Next, the court stated that it was following the four-step framework set forth in *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013), for analyzing a motion for a change of domicile. With respect to the first *Rains* step, the court stated that, because the parties lived more than 100 miles apart, Aziz did not have to establish that the factors set forth in MCL 722.31(4) supported Aziz's motion for a change of domicile.

The court then turned to the second and third *Rains* steps, i.e., whether an established custodial environment existed and, if so, whether the change of domicile would alter or modify that established custodial environment. The court found that the child had an established custodial environment with both parties and that the proposed move to Pakistan would dramatically alter and disrupt the child's established custodial environment with Safdar.

Finally, the court turned to the fourth *Rains* step, i.e., whether Aziz had established by clear and convincing evidence that the change in domicile would be in the child's best interests under the factors set forth in MCL 722.23. The trial court found that the parties were equal on factors (a), (b), (c), (d), (e), (f), (g), and (h). The court did not consider factor (i) because the child was too young to express a preference, and determined that factor (k) was inapplicable. The court found that factors (j) and (*l*) favored Safdar, and thus concluded that Aziz had failed to demonstrate by clear and convincing evidence that it was in the child's best interest to modify the established custodial environment. Therefore, the court denied Aziz's motion for a change of domicile.

Aziz moved for reconsideration, which the trial court denied. Aziz now appeals.

## II. STANDARD OF REVIEW

"In a child custody dispute, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. A trial court's ultimate decision on a motion for change of domicile is reviewed for an abuse of discretion. *Rains*, 301 Mich App at 324. In this context, "[a]n abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id*. (quotation marks and citations omitted).

A trial court's determination regarding the existence of an established custodial environment involves "an intense factual inquiry." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). Therefore, "[w]hether an established custodial environment exists is a question

-5-

of fact to which the great weight of the evidence standard applies." *Kubicki v Sharpe*, 306 Mich App 525, 540; 858 NW2d 57 (2014). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington*, 329 Mich App at 570. Therefore, the trial court's findings regarding the existence of an established custodial environment "should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted).[2] Likewise, the trial court's finding that the proposed move to Pakistan would alter and disrupt the child's established custodial environment with Safdar involves a factual determination that is reviewed under the great-weight-of-the-evidence standard. In reviewing the trial court's factual findings, we defer to the trial court's credibility determinations. *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006).

The trial court's findings regarding the best-interest factors of MCL 722.23 are also reviewed under the great-weight-of-the-evidence standard. *Bofysil v Bofysil*, 332 Mich App 232, 245; 956 NW2d 544 (2020). Therefore, the trial court's findings "will be affirmed unless the evidence clearly preponderates in the opposite direction." *Sinicropi*, 273 Mich App at 155 (quotation marks and citation omitted). "In reviewing the findings, this Court defers to the trial court's determination of credibility." *Id*.

### III. PAKISTAN'S STATUS WITH RESPECT TO THE HAGUE CONVENTION

At the outset, we conclude that the trial court properly determined Pakistan's status as a contracting party to the Convention. As we discussed in *Safdar IV*, 327 Mich App at 263-267, for the Convention to come into force between Pakistan and the United States, Pakistan had to accede to the Convention, and the United States had to accept that accession. At the time *Safdar IV* was decided, Pakistan had acceded to the Convention, but the United States had not accepted that accession. Thus, in *Safdar IV*, we held that "[t]he protective procedures and rules of the Convention are not binding between the United States and Pakistan, and as a result, Pakistan is not a 'party' to the Convention as contemplated by MCL 722.27a(10)." *Id*. at 267.

Since that decision, however, the United States has accepted Pakistan's accession to the Convention. On July 1, 2020, after this Court's decision in *Safdar IV*, the United States accepted Pakistan's accession to the Hague Convention, effective on October 1, 2020. See United States Department of State – Bureau of Consular Affairs, *Pakistan International Parental Child Abduction Information* <https://travel.state.gov/content/travel/en/International-Parental-Child-

---

[2] Aziz asserts that the issue should be reviewed as a question of law because the determination of the established custodial environment involves the application of law to facts. Her assertion is inconsistent with the caselaw that we have cited, however. Aziz's substantive argument on this issue is not properly understood as a legal argument. There is no real dispute about the legal requirements for determining whether an established custodial environment exists. There is no indication that the trial court misunderstood or failed to apply the correct legal principles. Aziz's argument is essentially a challenge to the trial court's determination that an established custodial environment exists *in this case*. The issue involves a factual determination. Under the caselaw that we have cited for the standard of review, the great-weight-of-the-evidence standard therefore applies.

Abduction/International-Parental-Child-Abduction-Country-Information/Pakistan.html> (accessed May 20, 2022); see also United States Department of State – Bureau of Consular Affairs, *U.S. Hague Convention Treaty Partners* <https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html> (accessed May 20, 2022). In its order denying Aziz's motion to change the child's domicile, the trial court noted that the Convention was "in place between the United States and Pakistan," and the United States had accepted Pakistan's accession. The trial court "defer[red] to the determination of the other branches of government that Pakistan has taken all appropriate steps to comply with the treaty's requirements." Because Pakistan acceded to the Convention, and the United States accepted the accession, Pakistan is now a contracting party to the Convention. See *Safdar IV*, 327 Mich App at 263-267 (discussing how a country becomes a party to the Convention). Accordingly, the trial court properly found that Pakistan had become a contracting party to the Convention. The prohibitions in MCL 722.27a(10) presently do not apply to Pakistan.

## IV. CHANGE OF DOMICILE

On appeal, Aziz challenges the trial court's findings that the child had an established custodial environment with Safdar and that this custodial environment would be altered by Aziz's proposed relocation of the child to Pakistan. Aziz's arguments are unconvincing.

In *Rains*, 301 Mich App at 325, this Court set forth a four-step framework for analyzing a motion for change of domicile:

> A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.

The trial court ruled that Aziz did not need to satisfy the first step of *Rains* because the parties lived more than 100 miles apart. See MCL 722.31(3) ("This section does not apply if, at the time of the commencement of the action in which the custody order is issued, the child's 2 residences were more than 100 miles apart."). Neither party challenges the trial court's ruling on this point.

## A. SECOND *RAINS* FACTOR—EXISTENCE OF AN ESTABLISHED CUSTODIAL ENVIRONMENT WITH SAFDAR

Regarding the second *Rains* step, Aziz argues that the trial court erred in determining that the child had an established custodial environment with Safdar. We disagree.

MCL 722.27(1)(c) defines an "established custodial environment" as follows:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

An established custodial environment has been described by this Court as

> an environment of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Rains*, 301 Mich App at 327 (quotation marks, brackets, and citation omitted).]

Also, a child may have an established custodial environment with both parents where a child looks to both parents for guidance, discipline, the necessities of life, and parental comfort. See *id*.

In finding that the child had an established custodial environment with Safdar, the trial court credited Safdar's uncontested testimony indicating that the child looked to him for advice and guidance during parenting time and that he spent hours a week talking to the child through videoconferencing. For the child's entire life, the child has lived with Aziz in Michigan while Safdar has lived in Maryland. Safdar exercised monthly in-person overnight parenting time in Michigan from noon on Saturday to noon on Sunday. The trial court noted Safdar's testimony that he provided discipline for the child, bought groceries, retrieved items for the child from storage, and arranged a hotel room to accommodate his in-person parenting time with the child. To avoid air travel during the COVID-19 pandemic, Safdar would drive from Maryland to Michigan to exercise his parenting time. The court stated that it was immaterial that Safdar exercised 24 total hours of parenting time, instead of the 28 hours allowed by the parenting time order, given his employment obligations as well as the logistical and financial efforts he made to exercise parenting time. He also had twice-weekly parenting time on a videoconferencing platform. Although the virtual sessions are designated to last 30 minutes, they often last much longer. Safdar has tried to teach the child the Urdu alphabet during virtual parenting time, and testified that the child looks to him for guidance and discipline. He cited as an example a recent incident in which the child looked to him for guidance while they were sledding.[3] The court found that Safdar had forged a relationship with the child despite Aziz's poor communication, belatedly conveying some information, and obfuscation of the child's school enrollment status. The trial court found credible Safdar's testimony regarding the relationship that he had forged with the child. This Court must defer to the trial court's credibility determinations. *Sinicropi*, 273 Mich App at 155. The court

---

[3] Aziz isolates Safdar's testimony about the sledding incident to argue that this by itself is insufficient to show that an established custodial environment exists. But Safdar was merely citing this as one example to show the nature of his parental relationship with the child.

thus found that the child had an established custodial environment with Safdar (in addition to having an established custodial environment with Aziz). Aziz has failed to show that the trial court's findings were against the great weight of the evidence.

In both her principal brief on appeal and her reply brief on appeal, Aziz refers to Safdar as a "Zoom-Dad." This term is inaccurate in light of the evidence in this case. As explained, Safdar consistently exercised parenting time with the child for her entire life, through videoconferencing and in-person overnight visits. Despite living in different states, Safdar made considerable effort to maintain a consistent role in the child's life.

Aziz also argues that nothing has really changed since 2016, when the trial court found that the child's established custodial environment existed only with Aziz. As explained, the four-step framework set forth in *Rains* required the trial court to determine the child's established custodial environment. This determination involved an intense factual inquiry. *Foskett*, 247 Mich App at 6. In resolving Aziz's motion for a change of domicile at issue here, the trial court properly considered evidence concerning the facts as they existed at the time of the court's decision. In 2016, the child was merely an infant. Since that time, according to Safdar's testimony, he and the child have forged a relationship marked by security, stability, and permanence. His testimony supported the finding that he provides care, love, and guidance appropriate to the child's age and needs. Overall, the trial court's findings regarding the existence of an established custodial environment were not against the great weight of the evidence.

## B. THIRD *RAINS* FACTOR—ALTERATION OF THE ESTABLISHED CUSTODIAL ENVIRONMENT

Next, with respect to the third *Rains* step, Aziz argues that the trial court erred in finding that the proposed move to Pakistan would alter the child's established custodial environment with Safdar. We disagree.

Under the third *Rains* step, "the trial court must determine whether the change in domicile would cause a change in the established custodial environment." *Rains*, 301 Mich App at 328; see *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) ("When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment."). Though a decision affecting the child's welfare "may well require adjustments in the parenting time schedule[], this does not necessarily mean that the established custodial environment will have been modified." *Pierron*, 486 Mich at 86 (citation omitted). "If the required parenting time adjustments will not change whom the child naturally looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed." *Id*.

The trial court found that Aziz's proposed move to Pakistan would dramatically alter and disrupt the child's established custodial environment with Safdar. The court noted that Safdar would be unable to drive or take a short flight to see the child in the event of an emergency, to attend an extracurricular school event, for a milestone event in the child's life, or for regular parenting time. Regular parenting time would be severely limited by the significant transit time required. The court noted the time and expense required to fly from the United States to Pakistan. If Safdar undertook the trip, he would have to exercise his parenting time while recovering from

jet lag. There is a time difference of approximately nine hours between Islamabad and Maryland. Videoconferencing would, therefore, require "one of the callers to be available extremely early, extremely late, or during the middle of the work (or school) day." In the trial court's view, this was not a viable solution to nurture the child's relationship with Safdar. Also, regular travel to Pakistan was not feasible given Safdar's employment and his need to ration his leave time for vacation and illness. The court also noted Aziz's conduct in failing to be forthcoming with information while the parties were separated in the United States. The court, therefore, had little confidence that a move to Pakistan would foster a positive coparenting relationship. Hence, the court found "that the proposed change would seriously disrupt the child's established custodial environment existing now with [Safdar]."

Aziz has not shown that the trial court's findings were against the great weight of the evidence. She asserts that the child's established custodial environment with Safdar can adapt to wherever Aziz and the child live. Aziz further suggests that the move would affect only the logistics of Safdar's parenting time and not the established custodial environment. Aziz's argument fails to grapple adequately with the practical realities of the time and expense associated with international travel between the United States and Pakistan. Aziz suggests that Safdar could travel from the United States to Pakistan "from time to time," but Safdar's employment and limited leave time made this impractical. Aziz argues that Safdar and the child can continue to exercise virtual parenting time. The trial court reasonably concluded, however, that the exercise of parenting time by videoconferencing would be severely hindered by the nine-hour time difference between the two countries. In short, it is not merely the logistics of parenting time that would be affected. Rather, the proposed move to Pakistan would dramatically undermine Safdar's practical ability to continue having meaningful parenting time. The move to Pakistan would very likely change the degree to which the child looked to Safdar for "guidance, discipline, the necessities of life, and parental comfort," because of the likelihood the distance would prevent Safdar from taking advantage of all of the offered parenting time, and the effect the large time difference would have on the ability of Safdar and the child to engage in videoconferencing. *Pierron*, 486 Mich at 86. Additionally, given Aziz's historical failure to be forthcoming with information about the child's healthcare and education while Aziz has been living in the United States, it was reasonable for the trial court to determine that the move to Pakistan would not promote Safdar's ongoing role in the child's life. See *id*. Overall, the trial court's finding, that the proposed move to Pakistan would alter the child's established custodial environment with Safdar, was not against the great weight of the evidence.

## C. FOURTH *RAINS* FACTOR–BEST INTERESTS

Aziz next presents arguments challenging the trial court's findings regarding some of the best-interest factors of MCL 722.23 and the trial court's determination that Aziz failed to prove by clear and convincing evidence that the proposed move to Pakistan was in the child's best interests. Aziz's arguments are unavailing.

Under the fourth *Rains* step, "[i]f the trial court concludes that a change in an established custodial environment would occur, then the party requesting the change of domicile must prove by clear and convincing evidence that the change is in the child's best interests." *Rains*, 301 Mich App at 328. In determining the child's best interests, the trial court is required to consider the factors set forth in MCL 722.23. *Rains*, 301 Mich App at 328-329. The trial court's "findings and

-10-

conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id*. at 329 (quotation marks and citation omitted). Again, "[t]his Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Id*. (quotation marks and citation omitted).

On appeal, Aziz argues that the trial court erred by determining that she failed to prove by clear and convincing evidence that the proposed move to Pakistan was in the child's best interests. More specifically, Aziz argues that the trial court's findings regarding factors (d), (j), and (*l*) of MCL 722.23 were against the great weight of the evidence. We disagree.

## 1. BEST-INTEREST FACTOR (D)

Factor (d) is "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). With respect to this factor, the trial court noted that it was uncontested that the child had lived with Aziz and Aziz's aunt in the aunt's home since the child was born. The court stated that Aziz's "entitlement to her current residence is unclear. It is unknown, for example, whether [Aziz] has an informal agreement to reside with her aunt, if [Aziz] cosigned a lease with her aunt, or if [Aziz's] aunt is her landlord." The court noted that Safdar "did not challenge the stability of the current residence or argue that it was an unsatisfactory environment." The court concluded that "[t]his factor favors neither [party] because of the uncertainty in [Aziz's] current residence."

Aziz argues that the trial court should have found that factor (d) favors her instead of treating the factor as neutral. Aziz emphasizes that the child has always lived with her in the same stable, satisfactory environment. Aziz asserts that her entitlement to her current residence would more properly be considered under factor (e), which concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). In short, because the stability and quality of the home of Aziz's aunt was uncontested and the child has lived there since infancy, Aziz says that factor (d) should have been weighed in her favor.

The trial court did not err in concluding that this factor favored neither party. Initially, it is notable that Aziz herself seeks to move the child to Pakistan, which detracts from the stability of the child's current home. See *Bowers v Bowers*, 198 Mich App 320, 331; 497 NW2d 602 (1993) (noting that a parent's stated intention to move from a stable environment may detract from the stability of that environment). So even if the child currently lives in a stable environment, Aziz seeks to take the child away from that environment. The trial court acknowledged that Aziz and the child had lived in the home of Aziz's aunt since the child's infancy and that Safdar did not challenge the stability of the residence or argue that it was an unsatisfactory environment. Nonetheless, the court correctly observed that Aziz's entitlement to continue living in the residence was unclear. There was no evidence regarding whether Aziz was living with her aunt informally or was formally a tenant on a lease. Aziz testified that her aunt was getting older and wished to move back to Pakistan. Aziz further testified that, without her aunt's graciousness, Aziz would be unable to afford comparable housing in Bloomfield Hills. Contrary to Aziz's argument, the trial court properly considered these points under factor (d), which concerns the stability of the home

and the desirability of maintaining continuity. Overall, the trial court's findings regarding factor (d) were not against the great weight of the evidence.

## 2. BEST-INTEREST FACTOR (J)

Factor (j) is "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). With respect to this factor, the trial court stated, although the record did not reflect that the parties actively concealed information from each other, the court found credible Safdar's testimony that due to Aziz's conduct, he belatedly learned important information about the child. The court stated that, "absent a court order mandating action, [Aziz] voluntarily undertakes few steps to foster a relationship between the child and [Safdar] or include him in her life." Aziz had "seemingly deceived [Safdar] regarding the status of the child's school enrollment and may be discussing court proceedings with the child." The court stated that, "except after [Aziz] filed a motion, it does not appear she has approached [Safdar] with a plan or request to relocate to Pakistan." Given Aziz's actions in the United States, the court had "little confidence that [she would] endeavor to include [Safdar] in the child's life when separated by thousands of miles and several time zones." The court also noted that Aziz seemed "unwilling to permit [Safdar] to exercise parenting time at his residence in Maryland despite his requests." The court thus found that factor (j) favored Safdar.

Aziz argues that factor (j) is, at worst, neutral. Aziz says that she has tried to facilitate Safdar's relationship with the child. She contends that nothing in the record supports the finding that she discusses court proceedings with the child, aside from Safdar's unsubstantiated impressions. And she asserts that her testimony and documentary evidence contradict Safdar's testimony that he was never consulted on the child's schooling.

The trial court's findings regarding factor (j) were not against the great weight of the evidence. The trial court found credible Safdar's testimony that he belatedly learns information about the child from Aziz. This Court defers to the trial court's credibility determinations. *Rains*, 301 Mich App at 329. Safdar testified that, at the time of Aziz's December 2, 2020 deposition, he learned for the first time that the child was not attending school. Safdar testified that he was never consulted about whether the child was attending school or which school she should attend. During cross-examination, Aziz's attorney asked Safdar about an e-mail Aziz had sent Safdar in August 2020 indicating that she was proposing to enroll the child in online classes. Safdar stated that the e-mail was not structured well and was difficult to see. He responded to that e-mail in January 2021 after learning in December 2020 that the child had not been going to school. In January 2021, the child turned five years old and, in Safdar's view, became eligible for kindergarten. From August 2018 to December 2020, Safdar thought that the child was enrolled in some kind of school.

According to Safdar, the parties "have a very difficult, sort of frigid relationship and communication does not flow very well in general, including for health care." Aziz's attorney showed Safdar certain e-mails in which Aziz had conveyed information about the child's medical care to Safdar. Safdar testified that this information was conveyed to him after the fact and that he did not have advance knowledge about the medical care. Also, Safdar noted that Aziz's attorney was providing only a selective sample of e-mails. Safdar explained, "This is a selective snapshot of a larger picture." He elaborated:

My testimony is that our communication does not work very well. Oftentimes, I learn about appointments after the fact. Even when I do learn about it before, it's sort of very general. I'm seeing an ENT. Which ENT? What time? Where? I don't get details. So our communication generally is less than great.

Safdar also testified that he has found himself in conversations with the child about Pakistan, and expressed his concern that the child was being pulled into the legal case. Safdar's impression was that the child believes that Safdar is not allowing Aziz and the child to go to Pakistan. Also, in October 2020, Safdar had the impression that the child knew that Safdar had sent a letter to Aziz saying that the child needed to come to Maryland, and the child seemed unhappy about that. Safdar does not believe that it is psychologically good for the child to be involved in the legal case.

In sum, the trial court's findings regarding factor (j) were supported by Safdar's testimony, which the trial court found credible. Safdar indicated that he belatedly learned information about the child from Aziz, including with respect to healthcare and education. Although Aziz sent an e-mail to Safdar in August 2020 regarding the child's education, Safdar indicated that the e-mail was difficult to understand and that he had long been under the impression that the child was enrolled in school. Overall, the record provides ample basis to support the trial court's concern that, if the move to Pakistan were allowed, Aziz would not endeavor to include Safdar in the child's life. The trial court thus did not err in determining that factor (j) favors Safdar.

### 3. BEST-INTEREST FACTOR (L)

Factor (*l*) is "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). With respect to this factor, the trial court noted that, by Aziz's admission, her alleged job offer in Pakistan was tailored for her with an open-ended start date. The court stated that, "[g]iven [Aziz's] education and her professional experience, the court does not find credible her allegations that she is unable to find any relevant work in the United States." The court found it "concerning that [Aziz] seemingly focused her application efforts on positions within the legal field simply because of this case rather than pursuing careers within her fields of expertise." Despite having a medical degree and political experience, Aziz sought positions for which she lacked apparent qualifications, such as a legal assistant, loan originator, and mortgage closer or funder. The trial court found that Aziz's "job search efforts were made in less than good faith, such as applying to positions where she has no relevant qualifications, to manufacture her financial needs in Michigan." Despite this, Aziz had "finally found suitable employment with an appropriate income to support herself and the child augmented by [Safdar's] child support payments." The court also noted that Safdar "consistently travels to exercise his parenting time as a result of [Aziz] relocating to Michigan before the filing of the divorce complaint." The trial court concluded that factor (*l*) favored Safdar.

Aziz argues that factor (*l*) should be deemed either neutral or inapplicable. According to Aziz, she came to Michigan to live with her aunt due to Aziz's concerns about her health during her pregnancy. She claims that Safdar abandoned her. Aziz says that she lives in Michigan out of necessity and not to inconvenience Safdar's parenting time.

The trial court's findings regarding factor (*l*) were not against the great weight of the evidence. Notably, after summarizing Aziz's testimony, the trial court expressly determined that Aziz lacked credibility regarding her efforts to find employment. The trial court found that Aziz was not forthcoming about her ability to secure employment in the United States. The court stated that it did "not find credible [Aziz's] attempts to secure employment in the United States given— for example—her decision to apply for jobs in the legal field with no training beyond exposure to this case's extensive litigation history." This Court defers to the trial court's credibility determinations. *Rains*, 301 Mich App at 329. Given that Aziz's job search focused on positions for which she seemed to lack qualifications, while she failed to search for positions in the fields for which she possessed education or experience, the finding that her job search was conducted in less than good faith was supported by the record.

As for the trial court's single sentence noting that Safdar travels to exercise his parenting time as a result of Aziz moving to Michigan before the divorce complaint was filed, this finding was factually accurate. Aziz reads too much into this finding. The court did not suggest that Aziz lacked the right to move to Michigan or that it was improper for her to have done so. Overall, the trial court did not err in finding that factor (*l*) favored Safdar.

Accordingly, the trial court's findings regarding the challenged best-interest factors were not against the great weight of the evidence. In sum, the trial court found factors (j) and (*l*) favored Safdar, while the remaining factors were either neutral or inapplicable. Aziz has failed to demonstrate any error in those findings. The trial court did not err in determining that Aziz failed to show by clear and convincing evidence that the proposed move to Pakistan was in the child's best interests. The trial court thus properly denied Aziz's motion for a change of domicile.

Affirmed.[4]

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/Michael F. Gadola

---

[4] Aziz argues that the case should be reassigned to a different trial judge on remand. This argument is premised on this Court ordering a remand. In concluding her argument on this issue, Aziz states, "For these reasons, *should the Court remand this matter to the trial court*, it should include an instruction of reassignment in its opinion and order." (Emphasis added.) As explained earlier, however, Aziz's substantive arguments are unavailing, and we are thus affirming the trial court's order. Because there are no errors requiring remand, this Court need not address Aziz's argument that the case should be reassigned to a different judge on remand.